BENJAMIN F. WHETSLER *et al.*

*v.*

BARZILLA C. SPRAGUE.

*Opinion filed December 22, 1906.*

1. TRUSTS—*express trust need not be manifested in any particular form of writing.* Letters, memoranda or other informal writings may manifest an express trust, provided the object and nature of the trust appear with sufficient certainty therefrom.

2. SAME—*what does not create estoppel to prove trust relation.* Designating the money paid from one person to another as "rent," which was in fact paid under an agreement that it should represent the interest on the cost of the land, does not conclusively show the relation of landlord and tenant nor create an estoppel to prove the true relation of trustee and *cestui que trust.*

3. SAME—*courts do not follow the analogy of Statute of Limitations in matter of an express trust.* In suits to enforce a trust against an express trustee courts of equity do not follow the analogy of the Statute of Limitations as applied to suits at law.

4. SAME—*when complainant is entitled to relief.* In a proceeding against the holder of the legal title to land to have the title declared to be held in trust for the complainant, if the facts stated in the master's report entitle the complainant to the relief prayed for he is entitled to such relief, regardless of whether the deed to the defendant can be construed as a mortgage or by what name the transaction was characterized in the master's report.

APPEAL from the Circuit Court of DeWitt county; the Hon. SOLON PHILBRICK, Judge, presiding.

INGHAM & INGHAM, for appellants:

It is not necessary that a writing shall have been framed for that express purpose to make it sufficient to manifest a trust, it being sufficient if the recognition is incidentally made, provided the object and nature of the trust appear. It may appear incidentally in the course of a correspondence. *Kellogg* v. *Peddicord,* 181 Ill. 22; *Moore* v. *Pickett,* 62 id. 158; *Moser* v. *Funk,* 194 id. 352; *Keith* v. *Miller,* 174 id. 74; *Reigard* v. *McNeil,* 38 id. 404.

A deed, though absolute on its face, if intended as a security, will be held to be a mortgage. *Miller* v. *Thomas,* 14 Ill. 426; *Tillson* v. *Moulton,* 23 id. 600; *Davis* v. *Hopkins,* 15 id. 519; *Smith* v. *Sackett,* 15 id. 528; *Wright* v. *Gay,* 101 id. 233; *Williams* v. *Bishop,* 15 id. 553; *Klock* v. *Walter,* 70 id. 418.

Parol evidence may be received to show that a deed absolute on its face was intended as a mortgage or a mere security for a loan of money. *Purviance* v. *Holt,* 3 Gilm. 394; *Reigard* v. *McNeil,* 38 Ill. 404; *Wright* v. *Gay,* 101 id. 233.

Courts are not estopped from looking into all the facts and circumstances of a deed absolute on its face to ascertain whether a loan of and security for money was really intended. *Wyncoop* v. *Corning,* 21 Ill. 570; *Tillson* v. *Moulton,* 23 id. 600; *Brown* v. *Gaffney,* 28 id. 149.

The same is the rule in cases of loans for the purpose of entering land where the purchase is made in the name of the vendor, with an agreement to convey upon having the loan, and interest, refunded. *Davis* v. *Hopkins,* 15 Ill. 519.

Whether one performs acts of agency for another under an employment or as a volunteer can make no difference as to his responsibilities growing out of the relation. *Dennis* v. *McCagg,* 32 Ill. 429; *Conant* v. *Riseborough,* 139 id. 383; *Salsbury* v. *Ware,* 183 id. 512; *Casey* v. *Casey,* 14 id. 112.

Where a party obtains a conveyance of land in his own name, paying his own money for it but professing to act as

the agent of another, he will be estopped to deny his agency. He will hold the title for the benefit of his principal and as a security for the money advanced. *Reigard* v. *McNeil,* 38 Ill. 406; *Dennis* v. *McCagg,* 32 id. 429.

JOHN FULLER, and LEMON & LEMON, for appellee:

Every fact essential to the plaintiff's title to maintain a bill and obtain the relief sought must be stated in the bill, otherwise the defect will be fatal. *Helm* v. *Cantrell,* 59 Ill. 524; *Smith* v. *Brittenham,* 98 id. 188.

An allegation that there is written proof of the creation of the trust is essential. *Monson* v. *Hutchin,* 194 Ill. 431.

A resulting trust does not arise out of the contract of the parties, and where there is an express trust there can be no resulting or implied trust, and the Statute of Frauds is a sufficient defense to a claim of an express trust where there is no written proof of the creation of the trust. *Monson* v. *Hutchin,* 194 Ill. 431; *Stevenson* v. *Crapnell,* 114 id. 19; *Biggins* v. *Biggins,* 133 id. 211.

It requires clear evidence to overcome the presumption in favor of an absolute deed, and the refusal of a grantee to re-convey in violation of his parol agreement is not such fraud as takes the case out of the Statute of Frauds. *Williams* v. *Williams,* 180 Ill. 361; *Davis* v. *Stambaugh,* 163 id. 557; *Scott* v. *Harris,* 113 id. 447; *Lantry* v. *Lantry,* 51 id. 458.

The Statute of Frauds is for the benefit of the grantee in an absolute deed, to protect him from the claim of trusts not appearing upon the face. *Allen* v. *Woodruff,* 96 Ill. 11.

It is proper to set up the Statute of Frauds and Limitations in the answer. *Morton* v. *Nelson,* 145 Ill. 586; *Rogers* v. *Simmons,* 55 id. 76.

In equity, as well as in law, the allegations and proofs must correspond, and a party cannot make one case by his bill and another by the proofs. *Smith* v. *Brittenham,* 98 Ill. 188; *Davis* v. *Stambaugh,* 163 id. 557.

As long as the relation of landlord and tenant exists between parties the tenant cannot maintain a bill in equity against the landlord to impeach the latter's title. *Fleming v. Mills,* 182 Ill. 464; *Sexton* v. *Carley,* 147 id. 269; *Mackin v. Haven,* 187 id. 480.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Benjamin F. Whetsler and Ruth A. Whetsler, his wife, filed their bill in the circuit court of DeWitt county, alleging that Barzilla C. Sprague, the appellee, held the legal title to eighty acres of land in said county in trust for them, and praying for a conveyance of such legal title to them, subject to the lien of a mortgage, upon payment of the amount found due appellee for his advances. Appellee answered denying the existence of the alleged trust, and a replication having been filed, the issues were referred to the master in chancery, who took the evidence of the parties and returned the same to the court with his finding as to the controverted questions in favor of appellants and a recommendation that the relief prayed for should be granted. The cause was heard on exceptions to the report, which were sustained, and the bill was dismissed for want of equity.

There was some contradiction in the evidence, but the following facts were proved by the testimony and by letters of the defendant himself: James Gibson, who lived in Arkansas, was the owner of the land, and the defendant, who was a brother of the complainant Ruth A. Whetsler, was the agent of Gibson at Clinton, Illinois, and had the management of the property. In 1899 complainants were farming the land under a lease for three years, at an annual cash rental of $320. Complainants were desirous of purchasing the land and had some correspondence with Gibson concerning the same. It was encumbered by mortgage amounting to $1993, and he priced the land to them at $60 per

acre. Defendant, as agent for Gibson, negotiated with the complainants for a sale at that price, and wrote Gibson that complainants told him the land had been offered to them at $60 an acre and they would give that price if he would sign notes with them. He said that he would do so, and that any of the banks in Clinton would buy the notes at any time that Gibson wanted to sell them. The sale was to be subject to the mortgage, and it was necessary to secure the balance above the mortgage in some way. Defendant proposed to sign notes with complainants for such balance if he could be secured, but he was fearful about signing on account of the litigation pending between the complainants and another person. Complainants were not able to secure him in any other way, and it was agreed that the land should be conveyed to him so that he would be secure, and that they should have the land whenever they were in a situation to pay the amount due. In pursuance of this arrangement defendant on September 18, 1899, wrote to Mr. and Mrs. Gibson that he would send a deed for them to sign, and that Mr. and Mrs. Whetsler wanted them to make the deed in his name. He explained that proposal by saying that complainants got nearly broke up mixed up in the litigation before referred to, and had considerable of trouble and several lawsuits. The consideration was $4800 and the consideration named in the deed was $5200. Defendant explained to Gibson that the land would cost that much when it was all tiled, and that if Whetsler had to sell the land to finish paying for it he would not lose any money. Defendant's attorney sent the deed accordingly and it was executed. The agreement was that complainants should pay defendant $320 a year, which would pay the interest on the cost of the land, and they have occupied the land ever since and continued to pay that sum annually. The defendant deducted from the purchase price various charges against Gibson, including his charge for looking after the farm and collecting rent, cash paid for attorney's fee and a charge for selling the land,

224—30

and gave to Gibson his three notes for $879.92 each, payable in one, two and three years, with interest at five per cent, payable semi-annually, which represented the balance due. The land was afterward tiled, Mr. Whetsler doing the work and defendant paying for the tile. Complainants paid some taxes on the land, and in February, 1905, offered to re-pay appellee, but he refused, and offered to sell the land to them at $100 per acre.

It is contended, in support of the decree, that the trust was an express one, and was not manifested or proved by any writing signed by the defendant. It was not necessary that the trust should be declared by the defendant in any particular form or that a writing should have been framed for the purpose of acknowledging the trust, but such a declaration may be found in letters, memoranda or writings of the most informal nature, provided the object and nature of the trust appear with sufficient certainty therefrom. (*Kingsbury* v. *Burnside,* 58 Ill. 310; *Union Mutual Life Ins. Co.* v. *Campbell,* 95 id. 267; *Kellogg* v. *Peddicord,* 181 id. 22; 2 Pomeroy's Eq. Jur. sec. 1007; 28 Am. & Eng. Ency. of Law,—2d ed.—880.) The trust in this case was very clearly declared in various letters signed by the defendant. In a letter dated August 25, 1899, he said that B. F. Whetsler and wife would give $60 an acre for the land if he would sign notes with them; that he would do so, and that he wanted to close the contract at once if Whetsler took the land. On September 3, 1899, he wrote to Gibson that Whetsler would take the land at $60 per acre, payable as specified in the letter; that he himself would sign the notes and they would make Gibson perfectly safe. On September 16, 1899, he wrote Gibson that complainants had accepted the proposition, and on September 18 he wrote the letter, already referred to, with reference to having the deed made in his own name and the reasons for it. On February 28, 1900, defendant rendered an account to Gibson in a letter signed by him, in which, in addition to his other charges for looking

after the property, he made a charge of $20 for selling the land. These papers sufficiently manifest and prove the alleged trust.

It is further urged that after the conveyance to defendant complainants paid rent to him, and that they are thereby estopped to dispute or impeach his title. The money was paid under an agreement that it should represent the interest on the cost of the land, and although it was sometimes called rent, and checks mention it as such, the real relation of the parties was not that of landlord and tenant. The agreement of the parties fixed their relation, and under that agreement the complainants were purchasers of the land and defendant was to be secured by a conveyance of it until he should be reimbursed. There was no estoppel to prove the true relation.

In suits to enforce a trust against an express trustee, the courts do not follow analogies of statutes of limitation at law, (1 Pomeroy's Eq. Jur. sec. 419,) and in this case there was no *laches* which would bar the remedy in equity. It is also immaterial by what name or in what way the transaction was characterized in the report of the master. The facts stated authorized the relief prayed for, and if the deed could not be construed as a mortgage, the complainants were not thereby prevented from having such relief as the facts stated entitle them to.

The decree is reversed and the cause is remanded to the circuit court of DeWitt county, with directions to enter a decree in accordance with the views herein expressed, to refer the cause to the master in chancery for an accounting, and, upon such account being taken and the amount due the defendant being ascertained and paid, to require the defendant to convey the legal title to the land in question to the complainants.          *Reversed and remanded.*