Arthur F. Albert, Sr., Appellant, v. Rosella H. Albert
and Arthur F. Albert, Jr., Appellees.

Gen. No. 44,046.

Opinion filed May 4, 1948.   Released for publication June 8, 1948.

Harry A. Biossat, of Chicago, for appellant.

Nash, Ahern & McNally, of Chicago, for certain appellee; Martin J. McNally, of counsel;

Charles P. Megan, guardian ad litem, for certain appellee.

Mr. Justice Scanlan delivered the opinion of the court.

Plaintiff appeals from a decree dismissing his complaint for want of equity.

The complaint alleges that plaintiff is the husband of Rosella H. Albert, defendant, and the father of Arthur F. Albert, Jr., defendant, a minor; that on June 3, 1944, he, as donor, gave and conveyed to himself and his wife, as trustees, in trust for defendant Arthur F. Albert, Jr., the sum of $30,000 in cash and that said transfer in trust was evidenced by a written declaration of trust, a copy of which is made a part of the complaint (Plaintiff's Exhibit 1); that under the terms of the trust plaintiff and his wife were given the right to hold and manage said property and to invest in securities of any nature or kind deemed advisable by said trustees, and that under the power granted in the declaration of trust the sum of $30,000 had been invested by the trustees in United States Government bonds, the possession of which had been taken by his wife, who now holds the same in her possession; that under the terms of said declaration of trust plaintiff reserved the right to revoke, alter or amend said trust in whole or in part at any time and from time to time by a memorandum in writing delivered to the trustees, and to authorize and direct the trustees to assign,

transfer, pay over and deliver to plaintiff's order all or any part of the trust estate in such form as it may exist, and that such direction to the trustees upon the making of such assignment, transfer, payment or delivery should operate as a revocation of the trust created by said declaration of trust; that on December 6, 1945, plaintiff executed a written revocation of the trust and by said writing authorized and directed plaintiff and his wife, as trustees under said declaration of trust, to assign, transfer, pay over and deliver to plaintiff all of the trust estate in such form as it then existed, and that a copy of said revocation was served upon plaintiff as trustee and upon his wife as trustee on December 6, 1945, and that therefore plaintiff became entitled to all of the trust estate in such form as it then existed; that all of said trust estate is now held by his wife, who refuses to turn over and deliver to him said assets of said trust estate. The complaint prays that the court declare said trust dated June 3, 1944 (Plaintiff's Exhibit 1) terminated and ended; that an accounting be had as to what assets were then held in said trust and that his wife be directed and ordered to turn over and deliver to him all of said trust property in such form as it then existed. The amended answer of defendant Mrs. Albert averred that she is living separate and apart from plaintiff and that there is pending in the Circuit court of Cook county a divorce proceeding in which she is plaintiff and the plaintiff in the instant cause is defendant. She admits that on June 3, 1944, plaintiff, as donor, gave and conveyed to himself and her, as trustees, in trust for their son, the sum of $30,000 in cash, but denies that such transfer in trust was evidenced by the written declaration of trust a copy of which was attached to the complaint. She avers that the alleged written trust dated June 3, 1944, a copy of which was attached to the complaint, was not executed on June 3, 1944, and was not executed at or be-

fore the time of the creation of the trust, but was made and signed by plaintiff at some time unknown to defendant more than one year after the trust was created; that the genuine written declaration of trust evidencing said trust was executed on or about June 3, 1944, a copy of which is attached to the amended answer (Plaintiff's Exhibit 13); that she was a co-donor of the sum of $457.85 and that said sum became and constituted a part of the trust; that the genuine written declaration of trust did not reserve the right to plaintiff to revoke, alter or amend the trust; that she admits that she, as trustee, has in her possession the United States Government bonds which she holds for herself and plaintiff, as trustees, for the use and benefit of the minor, Arthur F. Albert, Jr., and she admits that she refuses, as trustee, to turn over and deliver to plaintiff the assets of the trust estate.

At the time of the hearing of this cause plaintiff and his wife had been married for eighteen years and as far as this record shows their marital relationship at the time of and prior to the creation of the trust was congenial. They had one child, Arthur F. Albert, Jr., who, at the time of the hearing, was seventeen years of age. Plaintiff is a lawyer and is also president of the Standard X-Ray Company, a manufacturing concern. Prior to June 3, 1944, he had talked with his wife about creating a trust—about doing something for the boy. "Q. [to plaintiff] You created this trust in accordance with your conversations with Mrs. Albert to make a gift to your boy; isn't that true? Mr. Biossat [attorney for plaintiff]: I object to that, if the Master please. That is a conclusion. The Master: I will let him answer. Mr. McNally [attorney for Mrs. Albert]: Q. Isn't that true, Mr. Albert? A. I stated that I said you could make a gift free of gift tax. Mrs. Albert said that she thought it was not the thing to do because sometimes you could not control children, so I then said I would arrange the creation of this trust so that

I could have some semblance of control over him. Q. Your original intention, Mr. Albert, was to make a gift to your boy; isn't that true? A. My only intention was to create a trust for my boy, a trust which would please Mrs. Albert, too, whereby we retained control over what she termed might be his future actions, and in accordance with that plan I prepared the trust. Q. And for that reason you deposited this $30,000 in the Aetna State Bank, making yourself and Mrs. Albert as trustees of the trust; is that correct? A. That is correct." On June 3, 1944, plaintiff caused to be issued, by Standard X-Ray Company, a check for $30,000, payable to himself. He then indorsed upon its back the following: "A. F. Albert Trustees of Arthur F. Albert, Jr." Plaintiff testified: "*After that check was issued I took the check over to the Aetna State Bank and deposited it into the account of trustees of Arthur F. Albert, Jr.*" An officer of the bank testified that when this large check was deposited there was no letter or written instructions received regarding the deposit and that he then telephoned Mr. Albert as to just exactly what was intended, and, *acting upon information he received over the telephone from plaintiff,* he drafted the instrument (sometimes referred to in the record as Plaintiff's Exhibit 13) which reads as follows:

"Trustees of Arthur F. Albert, Jr.      Trustee Account
                                                   No.   Checking

"2 signatures
necessary

"AETNA STATE BANK
DECLARATION OF TRUST

"Dated   Jun—3 1944

"A. F. ALBERT

"Arthur F. Albert, Sr. and Rosella H. Albert, herein called the 'Trustee' hereby makes known and declares that _he holds all moneys now and hereafter deposited

in ~~Account No.~~ checking account in AETNA STATE BANK, in trust for Arthur F. Albert, Jr. herein called the 'beneficiary,' whose address is 727 Hutchinson St.; is ——————; Birth date is ——————; Father's name is Arthur F.; Mother's name is Rosella H.; and is a Son of Trustee.

(Relationship to beneficiary)<br>''(Over)

''During the lifetime of the Trustee all moneys now and hereafter deposited in said account shall be paid to or upon the order of the Trustee and, upon the death of the Trustee, all moneys deposited in said account shall be payable to or upon the order of the beneficiary, or to his legal representative. The said Bank shall not be responsible for, or required to see to the proper application of funds withdrawn from said account. *The Trustee represents that there is existing no agreement in respect to the said account, except as herein set forth.* [Italics ours.]

''Both Trustees to sign.

''The signature of the undersigned hereto shall be the authorized signature which the said bank shall recognize in connection with the payment of funds or the transaction of other business on this account. The undersigned agrees to the Rules and Regulations of the ~~Savings Department~~ checking dept. of this Bank.

[signed] ''A. F. Albert     [signed] Rosella H. Albert
      TRUSTEE               TRUSTEE

''Trustee's            Trustee's
Father's name ———————— Mother's Name ————————
''Mailing
 Address     1932 Burling St.

| ''Date Account | Amount of | New Business | Accepted |
| --- | --- | --- | --- |
| ,Opened | First Deposit | Credit to | By |
| ''6/3/44 | | | |

''Ref.—Standard XRay Co.''

Upon the same day the bank sent the aforesaid instrument to plaintiff for plaintiff and his wife to sign the same. Plaintiff testified that he signed this instrument in his office on June 3, 1944, and then put it in his pocket and took it home to Mrs. Albert for her signature; that she signed it the same day in the evening; that it was three or four days later before he returned it to the bank. Mrs. Albert testified that it was not until June 14, 1944, that her husband told her that he had made the deposit in the bank and that he then gave her the trust account bank book and talked with her about the purchase of Government bonds with the trust fund; that she thinks that she signed Plaintiff's Exhibit 13 on June 14, 1944. Sometime between June 3 and June 14, 1944, plaintiff and Mrs. Albert had a conversation concerning the purchase of $30,000 in Government bonds, and on June 14 plaintiff and his wife, as trustees, drew a check on the trust account for $30,000 to pay for Government bonds in that amount. Mrs. Albert took the check and purchased Government bonds in the said amount. The receipt issued by the Federal Reserve Bank of Chicago shows that the bonds were issued "To Trustees of Arthur F. Albert, Jr. Rosella H. Albert % Arthur E. Albert 1932 Burling Street Chicago, Illinois." The bonds were delivered to plaintiff and he turned them over to Mrs. Albert, who placed them in a safety deposit box. Some days after June 3 the boy returned from military school and plaintiff, Mrs. Albert and the boy discussed a policy of insurance for the boy, and on June 14, 1944, plaintiff and Mrs. Albert executed an application for an insurance policy which provides that the premiums on the policy "are to be paid by the parents trustees." As the purchase of the bonds exhausted the $30,000 deposit in the trust account, Mrs. Albert, on June 16, 1944, with the knowledge and approval of plaintiff, deposited in the trust account $457.85 of her own money, and she and plaintiff then

executed a check, as trustees, drawn on the trust account, to pay the first premium on the policy of insurance, amounting to $257.85. After the issuance of the insurance policy all premiums were paid from the trust fund account and all coupons of the Government bonds were deposited in that account. Mrs. Albert testified that plaintiff brought the Government bonds home on June 14 and handed them to the boy, at the same time saying to him, "Here are the bonds you bought. These are your bonds. You better put them in a safe place", and the boy said, "Mother, can we keep them in your vault?" and plaintiff said he thought that would be a good place to keep them; that the next day she and the boy took the bonds and the insurance policy and placed them in the vault.

Unfortunately for the boy, marital troubles then arose between his parents, and plaintiff commenced to entertain bitter feelings toward his wife. The exact nature of the troubles is not shown by the record. Mrs. Albert testified that "Mr. Albert wanted me to discuss our marital difficulties with Mr. LoSasso [an attorney at law and an intimate friend of plaintiff], and I didn't want to; but, anyway, Mr. LoSasso called Mr. Albert one day and Mr. Albert asked Mr. LoSasso if he would come out to the house; that I wanted to see him, and he made an appointment for me to see Mr. LoSasso. He came out that afternoon. Mr. Albert and I met him, passed the time of day, and Mr. Albert finally said, 'Will you tell John what you want to tell him?' . . . I said, 'I really don't want to tell you anything, John, but Mr. Albert wants me to tell you that we are going to get a divorce.' With that, Mr. Albert went into a tirade, and told Mr. LoSasso that he would take everything away from me that he could get his hands on, and that he would also take Jo-Jo's bonds away from him. I said, 'Arthur, you can't do that'—. . . I said, 'Arthur, you can't take anything away from him; you have already given

it to him and it is his.' And he said, 'Oh, yes, but we can fix all those things up.' He said to Mr. LoSasso, 'She is so dumb, anyway, she wouldn't know the difference.' He says, 'I know the only way that I can hurt Dolly is by hurting her child.' And Mr. LoSasso said, 'Arthur, you have just gone off on a tangent; you are excited and you don't know what you are saying.' And Arthur says Yes, he supposed he was excited, and that he better leave, which he did.'' Plaintiff and LoSasso admit the meeting but deny defendant's statement as to what was said there. *On December 6, 1945,* plaintiff caused to be served upon Mrs. Albert a "Revocation of Trust" "of a certain trust deed dated June 3, 1944." The "Revocation", signed by plaintiff and acknowledged by him before "John LoSasso Notary Public", reads as follows:

### "REVOCATION OF TRUST

"Know all men by these presents, that I, Arthur F. Albert, Sr., of the City of Chicago, County of Cook and State of Illinois, do hereby allege and state as follows:

"1. I am the donor of a certain trust dated June 3, 1944, under the terms of which trust I, as such donor, sold, gave, granted and conveyed to Arthur F. Albert, Sr. and Rosella H. Albert, as trustees in trust for my son, Arthur F. Albert, Jr., the sum of Thirty Thousand Dollars ($30,000.00) in cash.

"2. Under the terms of said trust I, as the donor of said trust, reserved the right to revoke, alter or amend said trust in whole or in part, at any time and from time to time, by a memorandum in writing delivered to the trustees and to authorize and direct the trustees to assign, transfer, pay over and deliver to my order all or any part of the trust estate in such form as it may then exist; and that upon such direction to the trustees upon the making of such assignment, transfer, payment or delivery, same shall operate as a revocation of the trust so created.

"NOW, THEREFORE, in consideration of the premises and pursuant to the power granted to me under said Declaration of Trust, be it known that I have this day revoked said trust in whole, and by this memorandum in writing I do hereby authorize and direct said Arthur F. Albert, Sr. and Rosella H. Albert, as trustees under said Declaration of Trust, to assign, transfer, pay over and deliver to my personal order all of the trust estate in such form as it now exists.

"IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal this 6th day of December, A. D. 1945.

"Arthur F. Albert (SEAL)"

Plaintiff testified that on June 3, 1944, he went to the home of John LoSasso about 5:30 P. M. and there executed the following instrument (Plaintiff's Exhibit 1):

"DECLARATION OF TRUST

"Know all men by these presents, that I, Arthur F. Albert, Sr., of the City of Chicago, County of Cook, State of Illinois, for good and valuable considerations heretofore received by me, the receipt of which is hereby acknowledged, do hereby sell, give, grant and convey to Arthur F. Albert, Sr. and Rosella H. Albert, as trustees, in trust for my son Arthur F. Albert, Jr. the following described property, viz: the sum of Thirty Thousand Dollars ($30,000.00) in cash.

"To have and to hold all of said Thirty Thousand Dollars ($30,000.00) unto them as trustees for the following uses and purposes, to wit:

"1.  To hold and manage said property, to invest in securities of any nature or kind deemed advisable by the trustees.

"2.  I direct the trustees to pay to my son Arthur F. Albert, Jr., upon his reaching the age of 22 years the sum of $5,000.00 out of the principal of the trust estate in the hands of the trustees and to pay over to my said son a like amount each year

thereafter until he shall attain the age of 30 years at which time the trustees shall pay over to him the entire balance remaining in said trust fund.

"3.    I direct that the trustees shall apply so much of the income from said trust fund as the trustees may deem proper to the liberal maintenance and education of my said son.

"4.    I, the donor of this trust, reserve the right to revoke, alter or amend this trust in whole or in part, at any time and from time to time, by a memorandum in writing delivered to the trustees and to authorize and direct the trustees to assign, transfer, pay over and deliver to his order all or any part of the trust estate in such form as it may then exist. Such direction to the trustees upon the making of such assignment, transfer, payment or delivery, shall operate as a revocation of the trust hereby created.

"In Witness Whereof, I have hereunto set my hand and seal this 3rd day of June, 1944.

"Arthur F. Albert (Seal)

"State of Illinois } ss
  County of Cook }

"I, John LoSasso, a Notary Public, in and for said County, do hereby certify, that this instrument was duly acknowledged before me by the above named ARTHUR F. ALBERT, SR. this 3rd day of June, 1944.

"John LoSasso

"Notary Public

"(NOTARIAL SEAL)"

The testimony of John LoSasso corroborates the testimony of plaintiff as to the execution of the foregoing instrument. Plaintiff testified that after he executed that instrument he put it in his pocket and took it away with him. Defendants strenuously contend that the foregoing instrument was not executed on June 3, 1944, and was not executed until sometime after the marital troubles developed between plaintiff

and his wife. Plaintiff testified that he retained Plaintiff's Exhibit 13 for at least three or four days before he returned it to the bank; that he signed it as trustee; that on the night of June 3, 1944, after he had executed the declaration of trust (Plaintiff's Exhibit 1) at the home of LoSasso he went to his home and there had Mrs. Albert sign Plaintiff's Exhibit 13 as trustee and that at that time he had in his pocket the declaration of trust he signed at the home of LoSasso. A pertinent question at once presents itself: If plaintiff executed the declaration of trust (Plaintiff's Exhibit 1) at the home of LoSasso on the evening of June 3, why did he later sign the irrevocable declaration of trust sent him by the bank, cause his wife to sign it, and thereafter return it to the bank instead of turning over to the bank the declaration of trust that he claims he executed at the home of LoSasso? Plaintiff makes the following preposterous answer to this question: That he considered Plaintiff's Exhibit 13 as a mere signature card. Plaintiff is a lawyer, a business executive, a man of affairs, and, as the chancellor stated in his opinion, one would have to be very simple, indeed, to believe that plaintiff thought Plaintiff's Exhibit 13 was merely a signature card. Plaintiff was not hurried in signing that instrument (Plaintiff's Exhibit 13), as he had it in his possession for a number of days before he returned it to the bank. When he deposited the $30,000 in the bank *he deposited it into the account of Trustees of Arthur F. Albert, Jr.* For some time he had been thinking about creating a trust for his boy and had often discussed that subject with his wife. At the commencement of Plaintiff's Exhibit 13, in boldfaced type, appears the legend, "Declaration of Trust", and the instrument provides, in substance, that plaintiff and Mrs. Albert are the trustees of such account; that the signatures of both of them are necessary to make withdrawals therefrom; that they hold all moneys deposited and thereafter deposited in

the account in trust for Arthur F. Albert, Jr.; that during the lifetime of the trustees all moneys deposited and thereafter deposited in said account shall be paid to or upon the order of the trustees, and upon their deaths, to the beneficiary or his legal representative. There is no provision in Plaintiff's Exhibit 13 that even suggests a reservation of the right to revoke, alter or amend the trust. *A fortiori,* the declaration of trust (Plaintiff's Exhibit 13) contains the following: *"The Trustee represents that there is existing no agreement in respect to the said account, except as herein set forth."* Nevertheless, plaintiff testified that when he signed Plaintiff's Exhibit 13, had his wife sign it, and when he returned it to the bank, he had in his pocket the declaration of trust (Plaintiff's Exhibit 1). Furthermore, he testified that at the time he had his wife sign Plaintiff's Exhibit 13 he did not tell her anything about Plaintiff's Exhibit 1; that he did not show it to her, nor discuss it with her, *because he did not think that Mrs. Albert would understand it, and, secondly, that she was not sufficiently interested in the matter.* Both plaintiff and his wife testified that they discussed this matter of the trust many times and that plaintiff deferred to his wife's judgment in said matter; that he gave Mrs. Albert the custody of the trust account bank book and the $30,000 bonds that were purchased for the trust account. Plaintiff testified: "My only intention was to create a trust for my boy, *a trust which would please Mrs. Albert, too."* Mrs. Albert testified: "I am secretary-treasurer of the Standard X-Ray Company. . . . I have held that position since my father's death, over fifteen years ago. I am a director and a stockholder. I attend the directors' meetings. I usually take notes and Mr. Albert in the past has always had the stenographer type them." Her father, during his lifetime, seems to have had some position with the Company. We are satisfied that if plaintiff executed Plaintiff's Exhibit 1 on June 3 and had it on

his person when he talked with his wife that evening he would have mentioned that important fact to her. Plaintiff did not turn over Plaintiff's Exhibit 1 to the bank, nor does it appear that he made any mention of that instrument to the bank. Plaintiff admitted that if the trust was revocable that he, as the donor, would have to pay the income tax rather than the trust fund. In March, 1945, nine months after the trust was established, plaintiff directed the auditor of his business to prepare a trustees' income tax return on the income of the trust for the year 1944. He did not tell the auditor that the trust was a revocable trust nor did he show him Plaintiff's Exhibit 1, and plaintiff and Mrs. Albert, as trustees, paid the income tax on the trust fund for the year 1944 from the trust fund. But in 1946, *after the marital troubles between the Alberts had developed*—they separated in June, 1945—plaintiff gave his auditor Plaintiff's Exhibit 1, and plaintiff, individually, paid the income tax on the trust fund for the year 1945.

Plaintiff contends that his testimony and the testimony of LoSasso as to the execution of Plaintiff's Exhibit 1 has not been denied by any witness, and that there are not any facts or circumstances that tend to destroy the weight of their testimony. Defendants had the right to rebut this testimony by direct or circumstantial evidence, and after a careful study of the record we are satisfied that the testimony of plaintiff and LoSasso that Plaintiff's Exhibit 1 was drafted and executed by plaintiff on the evening of June 3, 1944, in the home of LoSasso was a bold attempt of plaintiff to get back through perjury the $30,000 that he had given to the irrevocable trust fund created for the benefit of his son. Since LoSasso was twelve years of age he has been an intimate friend of plaintiff. The testimony shows that at the time of the trial he was employed in the office of the State Auditor and that he obtained that position through the political influence

of plaintiff. As an indication of this lawyer's willingness to aid plaintiff, it appears that at the instance of the latter LoSasso advised Mrs. Albert concerning her domestic troubles—whether she had grounds for divorce against plaintiff, etc. While he knew that plaintiff entertained bitter feelings toward Mrs. Albert, still, the ethical impropriety of advising Mrs. Albert in the matter of her proposed divorce proceedings against his friend and benefactor does not seem to have concerned LoSasso. Sometime later he acknowledged the signature of plaintiff to the revocation notice.

The astute attorney for Albert realizes, apparently, the inequitable position of plaintiff in seeking to take back from the boy the $30,000 that he gave him, and he states in his brief that the purpose of plaintiff in the present proceeding is not to obtain the $30,000 for himself, individually; that his real purpose is to have Mrs. Albert removed as a trustee, and that "plaintiff feels that he is best serving the interests of his son by his action in this case"; that "Mrs. Albert has voluntarily left her husband and her son." Counsel for Mrs. Albert state that "the final decree in her divorce action belies the charge" that she voluntarily left her husband and son. During the trial Mrs. Albert made a formal offer to relinquish her trusteeship, provided that plaintiff would consent to have a corporation appointed as trustee in her place. The following facts throw light upon the claim of plaintiff that he is best serving the interests of his son by bringing this action. In the original report of the master in chancery appears the following: "Plaintiff realizing that he must offer to do equity in the premises, in one of his reply briefs, under Section V thereof, 'hereby offers and agrees that in the event of a finding in his favor in this cause that he will consent to the Court providing in any decree that may be entered herein that an irrevocable trust may be established in favor

of his son for the $30,000 involved herein, under the same terms as is set forth in the Declaration of Trust executed and acknowledged by him on June 3, 1944 except that plaintiff alone shall be the trustee named in said trust. *The sole purpose of this suit is to dispense with Mrs. Albert as co-trustee in the declaration of trust and this action will effectually accomplish the intent and desire of the plaintiff herein.'* Although this offer was not covered by the evidence in the transcript, the Master is of the opinion that the above quotation be considered as an offer binding upon the plaintiff, and the Master recommends that such offer be contained in and carried out by a decree of Court entered herein.'' Later, however, plaintiff changed his mind as to the offer that he had made and filed objections to the part of the master's report that we have quoted, and in the master's supplemental report he states that ''in a subsequent brief, the plaintiff withdrew said offer, and for that reason the Master sustains plaintiff's objection to the original Master's Report . . .'' The following testimony of Mrs. Albert also serves to throw light upon the claim of plaintiff ''that he is best serving the interests of his son'' by bringing this action. In December, 1945, the boy was in St. Luke's hospital, suffering with pneumonia. Mrs. Albert testified that she and her husband were both in the boy's bedroom and that ''Mr. Albert brought up the subject with the boy and myself, saying that I would not relinquish his bonds, and I said, 'Well, Jo-Jo, I will relinquish your bonds. I have no interest in them other than that I want you to have them. You asked me to keep them in my box for you, and that is where they are, and if you want your father to have them, that is something else, but they are yours and I think that you should have them' ''; that ''Mr. Albert went on at great length, and said that he had this trust agreement. He said, 'Your mother is just too dumb; she would not understand these things; but

you remember that I explained all these things to you, and now I want to have these bonds back' ''; that the boy was so sick that he just simply said, '' 'Oh, mother and dad, please don't act like a couple of children; just stop arguing.' He said if he had to have a lot of argument over his money and have that hang over his head like—just to beat him into doing things—that he didn't want them at all; that he felt he would be able to take care of himself sometime and would not need them.'' It clearly appears, therefore, that the sole purpose of plaintiff in this suit is to obtain possession of the $30,000 for his individual purposes. We are impressed with the following argument made by the able and conscientious guardian *ad litem,* Charles P. Megan: ''. . . the only parties personally concerned in the determination of this suit are the father and son. If the father is successful in this appeal he will get back the fund ($30,000) for his own personal use, and the son will lose it. The mother's interest is not for herself, but, first, as a co-trustee, who is bound to defend the trust from attack, and second, for the protection of her son. She herself will receive no profit from defeating this appeal. . . .'' We hold that Plaintiff's Exhibit 1 is a fraudulent and dishonest instrument, and that equity will not enforce it. Defendants raise a number of other grounds why that instrument should not be enforced, but it would unduly lengthen this opinion to refer specifically to them.

Plaintiff contends that in any event Plaintiff's Exhibit 13 is void as a declaration of trust because it does not contain all necessary elements of a voluntary trust, and that therefore he is entitled to the return of the United States Government bonds. Counsel for plaintiff argues this contention as though a complicated trust was here present and cites many cases, none of which applies to the instant case upon the facts. The general law as to what constitutes a valid trust is settled in Illinois. In *Fox v. Fox,* 250 Ill. 384, the court states (pp. 388, 389):

"It is further argued by appellants that an express trust cannot be sustained except by writing, and there is no writing by which Mary A. Fox can be bound as trustee, except her answer in this proceeding. It is not necessary that the trust should be declared by the trustee in any particular form or that a writing should have been framed for the purpose of declaring the trust, but such declaration may be found in letters, memoranda or writings of the most informal nature. (*Whetsler v. Sprague,* 224 Ill. 461, and cases cited.) It is well settled that an express trust may be declared by an answer in chancery signed by the party who in law is entitled to declare it. (*White v. Ross,* 160 Ill. 56; *Myers v. Myers,* 167 id. 52.) The terms of the trust must be gathered from the whole answer as it stands. (1 Perry on Trusts,—6th ed.—sec. 85; Lewin on Trusts,—9th ed.—55.) No particular form of words is necessary to create a trust when the writing makes clear the existence of a trust. (*Orr v. Yates,* 209 Ill. 222.) If it states a definite subject and object, it is not necessary that every element required to constitute it must be so clearly expressed in detail that nothing can be left to inference or implication. Parol evidence is admitted to make clear such details. 'If the writing makes clear the existence of a trust the terms may be supplied *aliunde.*' *Kingsbury v. Burnside,* 58 Ill. 310; 1 Perry on Trusts, (6th ed.) sec. 82; *Cagney v. O'Brien,* 83 Ill. 72; 28 Am. & Eng. Ency. of Law, (2d ed.) 879, and cases cited."

In a late case, *McDiarmid v. McDiarmid,* 368 Ill. 638, it is stated (pp. 642, 643):

"In support of their contention that they have proved an express trust appellees rely on our holdings in *Kingsbury v. Burnside,* 58 Ill. 310, and many other decisions, including *Whetsler v. Sprague, supra* [224 Ill. 461]. These decisions hold that the Statute of Frauds has been complied with if the trustee makes a memorandum or writing showing that the property is held in trust. The details and terms of the trust may

be established · *aliunde* and even by parol evidence. Thus, it is held, after an exhaustive review of the authorities in the *Kingsbury case,* that in order to establish an express trust and to meet the requirements of the Statute of Frauds it is not necessary that it be established by a formal declaration of the trust but it is sufficient if it be proved by letters or other memoranda. The writing need not be an instrument expressly framed for the purpose of acknowledging the trust. It is sufficient if the recognition or admission of the trust be incidentally made in the course of correspondence, and almost any memorandum will suffice. The letter or memorandum need not be addressed to the *cestui que trust* and may be written after title has been acquired by the trustee.''

In our judgment, Plaintiff's Exhibit 13 presents a simple trust. Plaintiff admits that for some time he was considering the question of establishing a trust fund for his son; that he went to the bank and made the trust deposit of $30,000 to the credit of the account of Trustees of Arthur F. Albert, Jr. In his complaint he alleges he created a trust for the son, but claims that it is evidenced by Plaintiff's Exhibit 1. We have heretofore disposed of the claim that the trust was evidenced by that exhibit. The testimony of plaintiff and Mrs. Albert shows conclusively that the trust was administered by them as trustees for a year and a half before plaintiff attempted to revoke it. It is conceded that the trust fund was to be invested in Government bonds and that this was done by the two trustees. It is further conceded that from income on the bonds the premiums on the policy of insurance were to be paid, which was done. Until the marital troubles developed between the parents the trustees had not the slightest difficulty in performing their duties as trustees. In *Helfrich's Estate v. Commissioner of Int. Rev.,* 143 F. 2d 43, the court had before it a ''Special Trust Agreement'', which reads as follows (pp. 44, 45):

"Special Trust Agreement

"Dated November 26, 1934.

"J. H. Helfrich and Mrs. Elsa F. Helfrich herein called the 'trustees' hereby make known and declare that they hold all moneys now and hereafter deposited in account number .......... in Harris Trust and Savings Bank in trust for ................., herein called the 'beneficiary', whose address is 707 University Place, Wheaton, Ill.

"During the lifetime of the trustees and the survivor of them all moneys now and hereafter deposited in said account may be paid to or upon the order of the trustees, or either of them, and upon the death of the survivor of the trustees all moneys deposited in said account shall be payable to or upon the order of the beneficiary. If either trustee shall be under legal disability which shall have been declared by a court of competent jurisdiction, he/she shall be deemed deceased for the purposes of this agreement. The said bank shall not be responsible for or required to see to the proper application of funds withdrawn from said account. The trustees represent that there is existing no agreement in respect of the said account except as herein set forth.

"Elsa F. Helfrich,
"J. H. Helfrich,
"Trustees for ..........."

(There were a number of these agreements before the court.) To quote from the opinion of the Federal court (p. 45): "The first question is whether valid trusts were created under Illinois law." The federal court then cites the law of Illinois as to the requisites of a valid trust and held (p. 46) that in view of the Illinois cases cited: ". . . it is clear that valid Illinois trusts were created in the instant case." The "Special Trust Agreement" in the *Helfrich's Estate* case is in form practically the same as Plaintiff's Exhibit 13, and arguments that are made by the plaintiff

in the instant case in support of his claim that Plaintiff's Exhibit 13 does not create a valid trust were made in that case. We cannot agree with the contention of plaintiff that the language in question in the *Helfrich's Estate* case is *obiter*. See, also, *Cohen v. Newton Sav. Bank*, 67 N. E. 2d 748, where the court held a deposit card stating that the depositor held the savings account in trust, to control and dispose of as he saw fit during his lifetime, and on his death to pay to named beneficiary the full amount then standing to credit of account, was sufficient to establish a valid trust for the benefit of the named beneficiary, who was entitled on depositor's death to possession of the deposit book and to the deposit represented thereby. Plaintiff argues that the fact that Plaintiff's Exhibit 13 fails to provide for the contingency if the beneficiary's death occurs prior to the death of the trustees, is a fatal defect; but he asks us to hold that Plaintiff's Exhibit 1 is a valid declaration of trust, and it contains the same alleged fatal defect. In any event, the beneficiary's interest in the trust was vested when it was created. Plaintiff testified that he deposited the check for $30,000 in the bank "into the account of Trustees of Arthur F. Albert, Jr.", and he declares in Plaintiff's Exhibit 13 *"that he holds all moneys now and hereafter deposited"* in that account *"in trust for Arthur F. Albert, Jr. herein called the 'beneficiary.'"* Plaintiff comes into court with unclean hands, and before equity will grant his prayer that the $30,000 be returned to him upon the grounds that the trust created, Plaintiff's Exhibit 13, is an invalid trust, it must clearly appear that the trust, under the laws of this State, is invalid. We believe that it would be a perversion of equity to take the bonds from the irrevocable trust estate created for the boy and turn them over to plaintiff. In our judgment the trust in question, Plaintiff's Exhibit 13, can be readily performed under the laws of this State. After a consider-

ation of the various points urged by plaintiff in support of his contention that Plaintiff's Exhibit 13 is an invalid trust, we are satisfied that this contention cannot be sustained.

The judgment of the Superior court of Cook county dismissing plaintiff's complaint for want of equity should be and it is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.