In re ESTATE OF AUDREY ZUKERMAN, Deceased.

First District (6th Division)   No. 1—90—3009

Opinion filed August 9, 1991.

---

*Justice White concurred with this opinion prior to his retirement.

Robert A. Coe & Associates, Ltd., of Chicago (Judith V. Stein and Hugh E. Pollard, of counsel), for appellant.

Fishman & Merrick, P.C., of Chicago (Charles A. Janda and Kenneth F. Berg, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

The subject of this appeal is an order entered by the circuit court of Cook County which found that Louis Rotfeld, deceased, held certain bonds in trust for the benefit of Audrey Zukerman, also deceased, and which awarded those bonds to the estate of Audrey Zukerman. The executor of the estate of Louis Rotfeld appeals the decision of the trial court, contending that the court erred in finding that Rotfeld intended and established a trust for the benefit of Zukerman.

The record indicates that Louis Rotfeld and Audrey Zukerman lived together in Chicago, Illinois, for 12 years. On December 2, 1988, Rotfeld and Zukerman both died from injuries they sustained in an automobile collision in Kenosha, Wisconsin.

In June 1987, 1½ years before he died, Rotfeld went to the Oak Trust & Savings Bank and spoke to Robert Sullivan, a vice-president of the bank about reregistering a Commonwealth Edison bond in the amount of $125,000. Rotfeld delivered the Commonwealth Edison bond certificate to Sullivan and requested that the bank hold the bond in a customer safekeeping account. Rotfeld told Sullivan that, upon his death, he wanted Zukerman to have the bond. Rotfeld requested that Sullivan handle the reissuance of the bond in the name of "Louis Rotfeld, as Trustee for Audrey Zukerman," and Rotfeld executed a bond power authorizing Continental Illinois National Bank, the transfer agent for Commonwealth Edison, to reregister the bond in that name. In accordance with Rotfeld's request, Sullivan had the bond re-

issued in the name of "Louis Rotfeld, as Trustee for Audrey Zukerman." No formal trust agreement was ever executed by Rotfeld.

In August 1987, Rotfeld again spoke with Sullivan about a second bond to be held by the bank for safekeeping. This bond, a Ford Motor Credit Corporation bond in the amount of $75,000, was uncertificated and was registered by means of a book entry. Rotfeld told Sullivan that he also wanted Zukerman to have this bond in the event of Rotfeld's death.

Although Sullivan attempted to have the Ford bond retitled in accordance with Rotfeld's instructions, this was never actually accomplished.

Sullivan requested that La Salle National Bank, the transfer agent for Ford Motor Credit Corporation, reregister the Ford bond in the name of "Louis Rotfeld, as Trustee for Audrey Zukerman." La Salle National Bank sent Oak Trust and Savings Bank a "confirmation of the delivery of the Ford bond," and Oak Trust and Savings Bank issued a safekeeping receipt to Rotfeld which indicated that La Salle National Bank was holding the bond in safekeeping. Both the confirmation of delivery from La Salle National Bank and the safekeeping receipt from Oak Trust and Savings Bank bear the name "Louis Rotfeld, as Trustee for Audrey Zukerman."

Because Rotfeld, individually, continued to receive interest payments on the Ford bond, Zukerman telephoned Sullivan to inquire as to whether the Ford bond had been properly reregistered. In late July 1987, Sullivan contacted M.B. Vick, the broker on whose books the Ford bond was recorded, to find out whether La Salle National Bank had accepted delivery of the bond. Without advising Sullivan or Rotfeld, La Salle National Bank apparently had returned the bond to M.B. Vick without having changed the registration of the Ford bond.

Sullivan and M.B. Vick continued in their efforts to reregister the Ford bond in early 1988. They did not, however, succeed in reregistering the Ford bond prior to Rotfeld's death.

Rotfeld told Sullivan that he wanted both bonds to go to Zukerman upon his death or in the event that something happened to him. Rotfeld specified that future interest payments were to be made to him as trustee for Zukerman.

Sullivan testified that the interest checks for the Edison bond were sent to Rotfeld as trustee and deposited into one of the accounts at Oak Trust and Savings Bank, where Rotfeld had both individual accounts and joint tenancy accounts with Zukerman. Sullivan could not recall, however, into which account the interest payments were deposited and could not say whether they were deposited into an account

held by Rotfeld individually or into a joint account held by both Rotfeld and Zukerman. The interest checks for the Ford bond were delivered to Rotfeld's broker, M.B. Vick, and deposited into Rotfeld's account with the brokerage house. Rotfeld also declared the interest income on his individual income tax returns. At the time of his death, both bonds were registered under Rotfeld's social security number.

The evidence adduced at trial includes a copy of Rotfeld's will in which he devised to Zukerman certain items of personal property and 45% of his residuary estate if she survived him by 30 days.

After the deaths of Rotfeld and Zukerman, the executor of the estate of Rotfeld contacted Sullivan and asked him to turn over the Commonwealth Edison bond. Sullivan complied with this request without questioning who was entitled to the bond. The executor of the estate of Rotfeld also requested that M.B. Vick turn over the Ford bond, and M.B. Vick complied with this request. Without the knowledge or consent of the estate of Zukerman, the executor sold the Ford bond. The executor still holds the Commonwealth Edison bond.

On March 22, 1990, the administrator of the estate of Zukerman instituted citation proceedings in the probate division of the circuit court of Cook County, seeking to recover the Commonwealth Edison bond and the proceeds of the Ford bond. After an evidentiary hearing, the trial court found that Zukerman was the beneficiary of an express *inter vivos* trust created by Rotfeld and that her estate was entitled to possession of both bonds.

The executor of the estate of Rotfeld appeals, asserting that there was insufficient evidence that Rotfeld intended to establish a trust for the benefit of Zukerman and insufficient evidence of the trust purpose or the manner in which that purpose was to be accomplished.

The trial court in the case at bar specifically found that Rotfeld established a valid *inter vivos* trust for the benefit of Zukerman, and we hold that this finding was not against the manifest weight of the evidence.

■ The requirements of a valid express trust include (1) intent of the parties to create a trust, which may be shown by a declaration of trust by the settlor or by circumstances which show that the settlor intended to create a trust; (2) a definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose and how the trust is to be performed; and (6) delivery of the trust property to the trustee. *In re Estate of Wilkening* (1982), 109 Ill. App. 3d 934, 940-41, 441 N.E.2d 158, 163; *Price v. State* (1979), 79 Ill. App. 3d 143, 148, 398 N.E.2d 365, 370-71.

■ An oral express trust is valid and may be established by parol evidence, but must be proven by clear and convincing evidence. (*Caudill v. Beil* (1984), 127 Ill. App. 3d 847, 850, 469 N.E.2d 257, 260; *Wilkening*, 109 Ill. App. 3d at 941, 441 N.E.2d at 163; *Price*, 79 Ill. App. 3d at 148-49, 398 N.E.2d at 371.) The acts or words relied upon must be so unequivocal as to lead to but one conclusion, and if the evidence is doubtful or capable of reasonable explanation upon any other theory, it is not sufficient to establish an oral express trust. *Wilkening*, 109 Ill. App. 3d at 941, 441 N.E.2d at 163; *Price*, 79 Ill. App. 3d at 149, 398 N.E.2d at 371.

■ Yet, no particular form of words is necessary to create a trust, when the writing makes clear the existence of a trust. (*Orr v. Yates* (1904), 209 Ill. 222, 237, 70 N.E. 731; *Albert v. Albert* (1948), 334 Ill. App. 440, 457, 80 N.E.2d 69, 77.) Wherever an intention to create a trust can be fairly collected from the language of the instrument and the terms employed, such intention will be supported by the courts. *Orr*, 209 Ill. at 237.

A trial court's finding as to the existence of a trust will not be disturbed on review unless it is against the manifest weight of the evidence. *Caudill*, 127 Ill. App. 3d at 850-51, 469 N.E.2d at 260; *Wilkening*, 109 Ill. App. 3d at 941, 441 N.E.2d at 163; *Price*, 79 Ill. App. 3d at 149, 398 N.E.2d at 371.

■ In the instant case, the evidence established that all of the requirements of a valid *inter vivos* trust were satisfied. Rotfeld deliberately and voluntarily acted to have both bonds retitled in his name "as trustee for" Zukerman. Rotfeld repeatedly told Sullivan that he wanted the bonds to be turned over to Zukerman upon his death or "if anything happened to him." This conduct clearly indicates that he intended to create a trust for the benefit of Zukerman. The trust property, beneficiary, and trustee were specifically identified.

Although the trust purpose and manner in which it was to be performed were not spelled out in detail, it is not necessary to the validity of a trust that every required element be so clearly expressed in detail that nothing can be left to inference or implication. (*Orr*, 209 Ill. at 237; *Albert*, 334 Ill. App. at 457, 80 N.E.2d at 77.) It can fairly be inferred that Rotfeld created the trust in order to provide additional financial security to his long-time companion after his death. The manner in which this purpose was to be effectuated was clear from Rotfeld's instructions to Sullivan that he was to receive the interest income as trustee for Zukerman and control of the two bonds was to be turned over to Zukerman upon Rotfeld's demise.

Sullivan testified that the interest checks for the Edison bond were sent to Rotfeld as trustee and deposited into one of the accounts at Oak Trust and Savings Bank, where Rotfeld had both individual accounts and joint tenancy accounts with Zukerman. Sullivan could not recall, however, into which account the interest payments were deposited and could not say whether they were deposited into an account held by Rotfeld individually or into an account held in joint tenancy by both Rotfeld and Zukerman.

Although the bonds were registered under Rotfeld's social security number and the interest income was declared on his individual income tax return, we do not believe that these circumstances alone are sufficient to indicate that Rotfeld did not intend to create a trust for the benefit of Zukerman. It was necessary that the bonds be registered and that the interest payments be declared as income in filings with the Internal Revenue Service. We hold that the manifest weight of the evidence supports the finding of the trial court that Rotfeld intended and created a trust for the benefit of Zukerman.

Zukerman was the sole beneficiary, and there was no evidence that Rotfeld reserved the power to revoke the trust. Thus, when Rotfeld declared the trust, Zukerman acquired a vested equitable interest in the entire trust property and, at her death, it passed to her estate.

Respondent, the executor of the estate of Rotfeld, contends that the trust was invalid as an attempted testamentary disposition or the creation of a "Totten" trust. The trial court rejected this contention, and we hold that this determination was not against the manifest weight of the evidence.

Rotfeld's conduct indicates an intent to create an immediate trust in his lifetime and to have the bonds turned over to Zukerman at his death. This conclusion is confirmed by the fact that Rotfeld left other property to Zukerman in his will and could have done the same with the bonds at issue. Yet, he did not. Rather, Rotfeld deliberately had the bonds retitled in his name as trustee for Zukerman and told Sullivan that he was to receive the interest income as trustee for her.

■ A settlor may create a trust of personal property whereby he names himself trustee for the beneficiary, and the reservation of a life interest in the property will not defeat the trust. (*Farkas v. Williams* (1955), 5 Ill. 2d 417, 425-26, 125 N.E.2d 600, 605; *In re Estate of Petralia* (1965), 32 Ill. 2d 134, 137-38, 204 N.E.2d 1, 3.) A settlor may reserve the power to consume the interest income or the principal of the trust property without destroying the vested equitable interest of the beneficiary. *Farkas*, 5 Ill. 2d at 429-30, 125 N.E.2d at 607.

■ Use of the words "at death," "after death," or "upon death" in the devise of a remainder refer not to the time when the remainder is to vest in interest, but to the time when it is to fall into possession of the remaindermen. (*Dyslin v. Wolf* (1950), 407 Ill. 532, 542, 96 N.E.2d 485, 490.) Whenever the person who is to succeed to the estate in remainder is in being and is ascertained, and the event which by express limitation will terminate the preceding estate is certain to happen, the remainder is vested. (*Dyslin*, 407 Ill. at 542, 96 N.E.2d at 490.) In the case at bar, Zukerman was in being and ascertained, and Rotfeld's eventual death was certain to happen. Consequently, Zukerman's interest vested immediately upon the declaration of the trust, although she was not to actually receive possession of the bonds until Rotfeld's demise.

■ The declaration of trust immediately creates an equitable interest in the beneficiary although the enjoyment of that interest is postponed until the death of the settlor. The fact that the beneficiary's actual enjoyment of the trust is contingent upon the settlor's death does not negate the existence of a present interest in the beneficiary during the settlor's lifetime. *Farkas*, 5 Ill. 2d at 425-26, 125 N.E.2d at 605; *In re Estate of Petralia*, 32 Ill. 2d at 137-38, 204 N.E.2d at 3.

■ Based upon the evidence presented, the trial court properly concluded that the conduct of Rotfeld was sufficient to create a valid and enforceable *inter vivos* trust for the benefit of Zukerman. The evidence established that upon declaration of the trust, Zukerman acquired an immediately vested interest in the two bonds at issue, the enjoyment of which would commence after Rotfeld's death. Thus, this interest passed to her estate at her death despite the fact that she did not survive Rotfeld.

■ Respondent claims that the trust must fail because Rotfeld did not adequately describe the purpose of the trust or the manner in which that purpose was to be effectuated. We find this argument unpersuasive.

As stated above, it is not necessary to the validity of a trust that every required element be so clearly expressed in detail that nothing can be left to inference or implication. *Orr*, 209 Ill. at 237; *Albert*, 334 Ill. App. at 457, 80 N.E.2d at 77.

It can fairly be inferred that Rotfeld created the trust in order to provide additional financial security to his long-time companion after his death. The manner in which this purpose was to be effectuated was clear from Rotfeld's instructions to Sullivan that he was to re-

ceive the interest income as trustee for Zukerman and control of the two bonds was to be turned over to Zukerman upon Rotfeld's demise.

Respondent argues further that the trust must fail because Rotfeld did not name a successor trustee and because he did not specify a certain date for the termination of the trust. Neither of these arguments is convincing. A trust will not fail for want of a trustee (*Golstein v. Handley* (1945), 390 Ill. 118, 125, 60 N.E.2d 851, 854; *Jones v. Katz* (1945), 325 Ill. App. 65, 80, 59 N.E.2d 537, 544), and accordingly, a trust should not be declared invalid merely because the settlor neglected to name a successor trustee. In addition, it is not necessary that there be a specific date for the termination of a trust. If from the terms of the instrument, the termination date can be clearly and fairly arrived at, the trust is not subject to attack on the ground of uncertainty of termination. (*Wood v. Continental Illinois National Bank & Trust Co.* (1952), 411 Ill. 345, 349, 104 N.E.2d 246, 248.) In the instant case, Rotfeld's instructions clearly indicated that the trust was to terminate upon his death and that the two bonds were then to be turned over to Zukerman. Thus, we hold that there was no uncertainty as to the date of the termination of the trust.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RAKOWSKI, P.J., and McNAMARA, J., concur.