In the Matter of the Estate of Gesmina Corirossi, Deceased.
Augustine Corirossi, Dominic Corirossi and Louis Corirossi, Jr., Petitioners-Appellees, v. Carrie Shukster, Individually and as Administrator of the Estate of Gesmina Corirossi, Deceased, Respondent-Appellant.

Gen. No. 11,587.

Second District, First Division.

June 16, 1962.

Collis M. Hennelly, and Alex J. Victor, of Rockford, for appellant.

Foltz, Haye & Keegan, and B. Jay Knight, all of Rockford, for appellees.

SMITH, J.:

Carrie Shukster, individually and as administrator of the estate of Gesmina Corirossi, deceased, appeals from an order of the Probate Court of Winnebago County directing her to account for the proceeds of a joint savings account as an asset of the estate.

Gesmina Corirossi died August 16, 1960, leaving six children as her only heirs at law. At the written request of all of the heirs, Carrie Shukster, a daughter of the deceased, was appointed as administrator of the estate, duly qualified as such, and filed her inventory, omitting a joint savings account of $8,000.21 deposited in her name and that of her mother as joint tenants. Three of the heirs filed a petition for her removal as administrator for mismanagement of the estate in failing to inventory the joint account. Evidence was taken and an order entered finding the account to be an asset of the estate and directing her to account for the proceeds as an asset. This appeal follows.

The evidence is undisputed that the mother had an individual savings account in the bank; that on January 1, 1960 the joint tenancy account in controversy was opened with funds wholly belonging to the mother; that the funds were the proceeds of the sale of some real estate owned by the mother; and that the usual joint tenancy account card was signed by the mother and the daughter and left with the bank. The terms of the joint tenancy contract are not in dispute. It further appears that the account lay dormant from its creation to the date of the mother's death. Thereafter, with appropriate consent of the Attorney General, the daughter withdrew the account and deposited it to a checking account of her own.

When the joint tenancy account was created, the mother, the daughter and a son, Victor, drove to the bank. The mother and Victor remained in the car. Carrie testified, when called by the petitioners, that

she obtained the card, that she and her mother signed it, and that she returned the card to the bank. She further testified that she then returned to the car and "I told her I did what she told me to do, and I put my name on there." When testifying on her own behalf she stated that her mother said to put the money in the bank and, "Put your name on it. When I need the money you can go after it." "What is there is yours and mine." The last sentence of the statement was stricken by the court on motion of the petitioners as a self-serving statement. She further testified that she handed the passbook to her mother. The record is silent as to any meanderings of the passbook thereafter.

The record further shows that the mother was in apparent good health until about a month before her death, but that she did not read the English language. There is no charge in the petition of fraud, mistake of fact, undue influence, duress, mental incapacity, fiduciary relationship, or anything that taints the daughter with any equitable wrongdoing. The petitioners contend that the joint savings contract, standing alone, is insufficient to establish donative intent, and that Carrie has the burden of proving that intent by clear and convincing evidence. Carrie, on the other hand, contends that the account card alone is evidence of donative intent in the absence of any contradicting evidence.

■■ We have read and considered with care the expression of the Supreme Court in In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445. At page 187 in that case, the Court stated:

"[T]hat the deposit agreement tends to show a donative intent on the part of the original owner of the funds, and that intention, so manifested, in the absence of contrary evidence, is sufficient

251

to establish ownership in the survivor by virtue of the contract upon the death of the original owner. The form of the agreement, however, is not conclusive as to the intention of the depositors between themselves."

It seems to us that the Court is there saying that the existence of the deposit agreement creates a presumption of donative intent. Thus the burden of going forward with the evidence is then cast upon the one attacking the gift. But, upon the presentation of any evidence contradicting the presumption, it disappears, and the burden is then on the donee to establish the gift by clear and convincing evidence. To hold that the deposit agreement has no probative value, standing alone, is to impose upon every executor or administrator the duty of attacking every joint tenancy bank account or risk being charged with mismanagement of the estate. We do not understand the Supreme Court to intend any such result.

■ Accepting the deposit agreement as presumptive evidence of donative intent, do the surrounding circumstances undermine and destroy the presumption? We believe they do. Carrie testified that when the real estate contract was paid off, some of the others wanted her mother to invest it, and she objected stating: "She needs the money." Brother Victor, as we have seen, was present when the instructions were given for the deposit of the funds. He was called by neither side! His name is typed in, in the petition to remove the administrator and then deleted by horizontal lines drawn through his name wherever it appears. His nonparticipation is a puzzle, to say the least. Mrs. Corirossi left a will which delayed distribution of her property for 20–21 years. The heirs agreed and contracted in the lawyer's office not to probate the will. The record is silent as to any mention of the joint deposit. Augustine testified that he had

252

an impression that the $8,000.21 was to be equally divided. The lawyer or his secretary evidently got no such impression as the inventory was prepared with it omitted. Four days later Carrie closed the joint account. She then paid the bills of her mother out of the fund and, after the instant petition was filed, filed her claim for reimbursement. If the funds belonged to her, no explanation is made as to why she would assume to pay the obligations of her mother. When she returned to the car she gave the account book to her mother. Her mother's statement, "What is there is yours and mine," and "When I need the money you can go after it," reasonably may be said to be mutually contradictory. These circumstances, we believe, leave any presumption of donative intent arising from the deposit agreement effectively anesthetized.

▮ In this state of the record the burden is on the donee to establish the donative intent and the gift by proof that is clear and convincing. In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445; Frey v. Wubena, 32 Ill App2d 374, 177 NE2d 724; In re Estate of Fitterer, 27 Ill App2d 264, 169 NE2d 578. Under the record and the circumstances in this case the administrator has failed to establish these requirements by clear and convincing evidence. For that reason the judgment of the probate court must be, and it is, hereby affirmed.

Affirmed.

DOVE, P. J. and McNEAL, J., concur.