**Stanley Koziol, Plaintiff-Appellee, v. Estelle Harris, Talman Federal Savings and Loan Association of Chicago, and Home Federal Savings and Loan Association of Chicago, Defendants. Estelle Harris, Defendant-Appellant.**

Gen. No. 51,184.

First District, Second Division.

April 25, 1967.

Raymond I. Suekoff, of Chicago (Stuart C. Katz, of counsel), for appellant.

Edwin R. Mysogland, of Chicago (Edward L. Stepnowski, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

This is an appeal from a decree restraining Estelle Harris, hereinafter called the defendant, from withdrawing funds from savings accounts standing in the names of plaintiff and defendant as joint tenants, from withdrawing funds from other accounts standing in the names

of defendant and her son, and decreeing that all funds in the accounts belong to plaintiff.

Plaintiff, a bachelor, resided with his mother during her lifetime and after her death resided in the home of his sister, Victoria Pall. During the periods of residence with his mother and with Mrs. Pall plaintiff's assets consisted entirely of funds in several savings accounts which he held in joint tenancy with his mother and after the mother's death with Mrs. Pall. Upon the death of Mrs. Pall in October of 1963, plaintiff continued to reside in the Pall residence until April of 1964, when he began to live with defendant, his sister.

Prior to April of 1964 in conversations between plaintiff and defendant, the latter suggested that plaintiff reside with her due to alleged mistreatment of plaintiff at the Pall residence and that plaintiff transfer the funds in his savings accounts into joint tenancy with defendant, for plaintiff's protection.

On January 23, 1964, plaintiff and defendant went to the Talman Federal Savings and Loan Association where plaintiff had savings accounts and a safety-deposit box in his and Mrs. Pall's names, in joint tenancy. Defendant's name was placed on the safety-deposit box, which gave her access to the box. Two new savings accounts were opened by plaintiff, one in the amount of $9,000 in his and defendant's names as joint tenants and the other in the amount of approximately $3,300 in plaintiff's name and defendant's name as trustee for plaintiff. (Plaintiff explained that the reason why two separate accounts were opened was so the F.D.I.C. insurance would cover the entire $12,300.)

On the same day plaintiff and defendant went to the Home Federal Savings and Loan Association where an account in the names of plaintiff and Mrs. Pall, in an amount approximating $6,100, was changed to the names of plaintiff and defendant in joint tenancy. Another ac-

count was opened at the Guardian Savings and Loan Association in the names of plaintiff and defendant in joint tenancy. This account has been closed and is not litigated.

Plaintiff went to live with defendant's family in April of 1964. In September he was requested to return to the Pall residence for the reason that defendant was leaving for Washington with her son. Approximately one week later defendant withdrew $3,000 from the Talman Federal joint tenancy account and deposited it into a joint savings account with her son at the Lake View Trust and Savings Bank. On the same day defendant withdrew all of the funds on deposit in the Home Federal account, over $6,100, and deposited this amount into a joint savings account with her son at the First National Bank of Chicago. Plaintiff and defendant did not discuss any of these withdrawals prior to this time.

Defendant, called as an adverse witness under section 60 of the Civil Practice Act, testified that she had made several withdrawals from the accounts prior to September of 1964 for the purpose of financing plaintiff's automobile, paying the interest on the automobile loan and generally for plaintiff's benefit. She also testified that plaintiff consumed a great deal of alcohol and that the reason she withdrew the $9,000 from the two accounts in September was "for one purpose—to keep [Stanley] from getting the money and blowing it," and that she felt "[Stanley] should be taken care of in later years." Defendant testified that she at no time discussed with plaintiff withdrawals of money for her own purposes and that she at no time paid income tax on the interest earned on the accounts although she received the tax information slips, which she turned over to plaintiff. Defendant testified that at the time the accounts were put into joint tenancy by plaintiff the clerk at the Savings and Loan Associations explained that defendant would have the power to withdraw all of the funds from

the accounts for any purpose and that plaintiff could do nothing about it. Defendant testified that plaintiff replied, "That is all right, I want her name on it. . . . She can draw it, or I can draw it."

Plaintiff testified that the funds in the Talman Federal and Home Federal accounts comprised his entire estate, that he and his mother had deposited the funds into the accounts from his savings over the years, and that his employment netted him $65 a week. He stated that he had no home or apartment of his own and that at the time he resided with Mrs. Pall prior to her death he held his savings accounts in joint tenancy with her. Plaintiff testified that after the death of Mrs. Pall defendant told him to change the accounts into her name and to reside with her, and that after defendant had withdrawn the funds from the Talman Federal and Home Federal accounts she refused to return the money to plaintiff.

The master found, inter alia, that the funds in the accounts from which defendant made the withdrawals belonged solely to plaintiff and that none of the funds belonged to defendant. The trial court ordered that defendant be restrained from withdrawing or in any way disposing of the funds remaining in the Talman Federal accounts, the First National account and the Lake View Savings account, that the institutions wherein the funds were deposited be restrained from disbursing any of the funds to defendant, and that defendant turn over to plaintiff all funds withdrawn from the Talman Federal and the Home Federal accounts. Judgment was entered for plaintiff and against defendant for the amounts withdrawn from the Talman Federal and the Home Federal accounts and for costs.

Defendant maintains that plaintiff, in placing his funds in joint tenancy savings accounts, made an inter vivos gift to her of an interest in the accounts. We disagree.

475

■ This case presents the unusual situation of the creator of a joint savings account seeking to prevent the other joint tenant from exercising control of the account on the grounds that no gift was intended to be made to the latter at the time the account was created. Normally the alleged donor is deceased, and his legatee, heir or personal representative seeks to avoid the alleged gift. While it is true, as defendant maintains, that a deposit of funds into a joint account with another person constitutes evidence of a gift to the joint tenant (In re Estate of Schneider, 6 Ill2d 180, 127 NE 2d 445,) it does not necessarily follow that a gift is created in all cases. The evidence in the case at bar, especially defendant's own testimony, strongly weighs against the requisite donative intent on plaintiff's part as well as the existence of a gift.

Defendant testified that in September of 1964, she "withdrew the money for one purpose—to keep my brother from getting the money and blowing it." She further testified: "I feel that he should be taken care of in later years. . . . I feel that it is his money." The question of ownership of the funds in the accounts was pursued by plaintiff's counsel and defendant stated at one point that she believed it was as much her money as it was plaintiff's, but admitted that "I feel it was his money. . . . The way I feel it is still his money." It was admitted by defendant that all of the withdrawals made by her were for the benefit of the plaintiff; all of the funds withdrawn from the accounts by defendant were given to plaintiff and defendant at no time withdrew any funds for her own personal use or purposes. Defendant never accepted the alleged gift, in no way exercised authority over the funds in the accounts inconsistent with plaintiff's ownership, nor took any action with regard to the funds commonly associated with the ownership of personal property. Estate of Kloss, 57 Ill App 2d 118, 125, 207 NE2d 92. On the contrary, defendant

476

affirmatively admitted plaintiff's ownership of the funds. Defendant's claim of a present, inter vivos gift from plaintiff in the accounts finds little support in the record.

██ The evidence strongly indicates that the names on the accounts were changed for convenience only. Plaintiff had in the past similarly held his accounts in joint tenancy with the persons with whom he resided. Furthermore, the funds placed into joint tenancy with defendant consisted of plaintiff's entire estate. It is unreasonable to presume a gift or an advancement where the subject consists of the entire estate of the alleged donor. Scanlon v. Scanlon, 6 Ill2d 224, 127 NE2d 435. The evidence shows that no gift was created by plaintiff's action of placing his accounts into joint tenancy with defendant.

For these reasons the decree is affirmed.

Decree affirmed.

LYONS, P. J. and BRYANT, J., concur.