*In re* Estate of FLORENCE M. HAYES, Deceased—(SHIRLEY M. HAYES, Admrx., Petitioner-Appellant, *v.* ANNA BLAKE *et al.,* Respondents-Appellees.)

(No. 54843; 

First District—February 18, 1971.

*Rehearing denied March 25, 1971.*

Groble & Groble, of Chicago, (Raymond Groble, of counsel,) for appellant.

Vescelus, Leetz, Perry & Pollard, of Wheaton, (John T. Perry and Thomas Pollard, of counsel,) for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Shirley Hayes, administrator of the estate of her aunt, Florence Hayes, field a citation proceeding against the respondent, Anna Blake, in the probate division of the Circuit Court. The administrator sought to recover funds which were on deposit in two savings accounts in the names of Florence Hayes and Anna Blake as joint tenants with the right of survivorship. She alleged that the funds were the property of Florence and were being withheld from the estate by Anna. The court found that the money belonged to Anna and dismissed the citation. The administrator appeals from the order of dismissal.

The savings accounts, prior to their being placed in joint tenancy with Anna Blake, were in the name of Florence Hayes and had been for many years. One, at the Home Federal Savings and Loan Association, was opened in October 1961 and remained unchanged until October 26, 1968, when Florence turned it into a joint account with Anna. The second account, at the Oak Park National Bank, was of long standing. For a period of time ending in December 1960, it was held in joint tenancy with a friend. In January 1961 it again became a joint account; this time with her brother; nine months later his name was dropped and the account remained in Florence's name alone for seven years. On November 2, 1968, she transferred the account into her name and that of Anna Blake.

From the time the accounts were established until her death, the passbooks for both accounts were retained by Florence. She made one de-

posit in the Oak Park account, none in the Home Federal; Anna made no deposit in either account. There were no withdrawals. Florence died on November 23, 1968. She had been a diabetic for many years and hospitalized several times, but there was no evidence that she was in expectation of death at the time she asked Anna to join her on the accounts.

■■ The agreements signed by the two women complied with section 2 and 2(a) of the Joint Rights and Obligations Act (Ill. Rev. Stat., 1967, ch. 76) and with section 770(a) of the Illinois Savings and Loan Act (Ill. Rev. Stat., 1967, ch. 32) and created joint tenancies in both accounts with the right of survivorship. *Doubler v. Doubler*, 412 Ill. 597, 107 N.E.2d 789 (1952). A gift to the survivor is presumed when a joint account has been understandingly created under the applicable statutes of this state. *In re Estate of Schneider*, 6 Ill.2d 180, 127 N.E.2d 445 (1955). The controversy in the present case turns on whether the presumption was rebutted.

■■ A party claiming adversely to the instrument creating a joint account has the burden of establishing by clear and convincing evidence that a gift was not intended. *Murgic v. Granite City Trust and Savings Bank* (1964), 31 Ill.2d 587, 202 N.E.2d 470. To sustain this burden of proof the administrator introduced into evidence exhibits showing the history of the accounts and presented her own testimony, that of Anna Blake and a neighbor of the decedent.

The administrator testified that although her aunt was in bad health, she had not seen her for 15 months before her death. On the date of her aunt's death she had been asked by Anna to turn the body over to her for burial in accordance with her aunt's wishes. She had refused. She said her aunt lived alone and that it was necessary to break the seal on the door to gain admittance to the apartment where she found the bankbooks on a closet shelf.

Anna Blake, testifying first as the court's witness and then in her own behalf, stated that she had known Florence Hayes, a 60-year-old spinster, for 25 years. They were good friends, saw each other at church, visited together once or twice a week in the year preceding Florence's death and talked frequently on the telephone. She accompanied Florence to the hospital several times between 1961 and 1968. Late in 1968 Florence called her and invited her to dinner. Florence told her that she wanted her name on the accounts and gave her cards to sign, which Florence had obtained from the bank. She signed the cards and Florence said, "Everything I have belongs to you" and added that she wanted Anna to take full charge of her funeral, burial and debts and give some of the money to Anna's brother, Joseph. Florence said that if she became ill Anna

could go to the bank for her and would be able to take care of her bills. Later on Florence telephoned Anna and a date was made for Thanksgiving Day to sign a card Florence had prepared to her safety deposit box. Because of Florence's death, this card was never signed. Anna testified that she tried to carry out Florence's instructions as to her funeral but that she was prevented from doing so. She further testified that she considered the money to be Florence's and did not ask about the amounts in the savings accounts; that she made no deposits or withdrawals and did not see the passbooks until ten months after Florence's death, when they were shown to her by the attorney for the estate at the time her deposition was taken in connection with the citation proceedings.

The neighbor, who lived across the hall from Florence, testified that Florence said, after returning home from having dinner with Anna, that Anna was to take care of everything—funeral, church, masses, money for Anna and unspecified amounts for Anna's brother, and for friends who were good to her but whose names were not mentioned. Florence told her, the neighbor said, that if she got sick she wanted Anna to be able to go to the bank and take money out for her.

From this evidence the administrator argues that the decedent's donative intent was negated because (1) if a donor of a joint tenancy bank account has a lengthy history of ill health and of having opened and closed such accounts with various persons, changes in such accounts indicate a pattern of convenience for the benefit of the donor and indicate no intention of an ultimate gift to the last joint tenant; (2) there is no presumption of a gift when the donor makes contradictory statements regarding the purpose of establishing a joint account, and (3) the presumption of a gift is overcome if the alleged donee testifies that she considered the subject of the gift to be the property of the donor. Cases are cited in which evidentiary factors such as these entered into decisions of the courts. However, none of the cases hold as a matter of law that the presumption of a gift is overcome by the presence of these factors.

In the cited case of *In re Estate of Weaver* (1966), 75 Ill.App.2d 227, 220 N.E.2d 321, there were three successive joint tenants on the decedent's bank account in less than two years and a declaration by the decedent that she was creating the joint account in question for the sole purpose of enabling the co-tenant to keep her in funds in the event she was unable to get out of her home. Furthermore, the surviving co-tenant testified that the decedent never told her the money would be hers when the decedent died. The facts in the present case are not akin to those in *Weaver*. There were not frequent changes of joint tenants;

there was no change at all in one of the accounts and in the other there was none for seven years. There was no evidence that Florence Hayes was confined by illness. The record shows that she was employed; that she got the signature cards from the banks and returned them herself, and that she went to one of the banks and made a deposit after the cards were signed. Furthermore, there was an express declaration by her that everything she had belonged to the donee—a fact corroborated by the administrator's witness, the decedent's neighbor.

In re Estate of Corirossi (1962), 36 Ill.App.2d 249, 183 N.E.2d 305, is cited by the administrator to support her contention that there is no presumption of a gift when an alleged donor makes contradictory statements regarding the purpose of creating a joint account. Corirossi involved an account established between a mother and a daughter with the mother's funds. At the time the account was opened, the mother told the daughter to deposit the money and said, "Put your name on it. When I need the money you can go after it" and "What is there is yours and mine." The statements were described as mutually contradictory by the Appellate Court and it was held that this and other circumstances pertaining to the account negatived the presumption of donative intent arising from the deposit agreement. The statements made by the mother were only one factor in the court's decision. Not only do the other circumstances in the Corirossi case differ widely from those in the present case, but the court applied a rule of evidence which was held inaccurate by subsequent Supreme Court decisions. The Appellate Court stated that the deposit agreement created a presumption of donative intent but that the presumption disappeared upon the presentation of evidence contradicting it, and the burden of proof then shifted to the donee to establish the gift by clear and convincing evidence. Frey v. Wubbena (1962), 26 Ill.2d 62, 185 N.E.2d 850 and Murgic v. Granite City Trust & Savings Bank (1964), 31 Ill.2d 587, 202 N.E.2d 470, applied a different standard holding that the burden of proof does not shift to the donee but remains with the party claiming adversely to the instrument creating the joint account, who must prove by clear and convincing evidence that a gift was intended.

Two cases are cited by the administrator in support of her position that when the survivor-donee testifies she considers the funds in the account to belong to the donor, there is no gift to the donee: Koziol v. Harris (1967), 82 Ill.App.2d 472, 226 N.E.2d 387 and In re Estate of Dawson (1968), 103 Ill.App.2d 362, 243 N.E.2d 1. In Koziol the alleged donor sought an injunction against his sister to restrain her from withdrawing funds from their joint accounts. He testified that he intended no gift when he placed his money in both their names. The sister's

testimony was that she withdrew money for only one reason: to prevent her brother (who, she said, consumed a great deal of alcohol) from "blowing it." She also testified: "I feel that it is his money * * * The way I feel it was his money * * * The way I feel it is still his money." From this and other testimony, the court concluded that the sister's claim of a gift was not supported by the record and that the evidence indicated that her name was placed on the account for the convenience of her brother. *Dawson* involved a credit union joint-account, created at the suggestion of the treasurer of the union, on which the alleged donee was made a party because her deceased mother-in-law did not understand she could have an account in her own name. Among the evidentiary items which convinced the court that no gift was intended was the daughter-in-law's testimony that she regarded the money in the account as her mother-in-law's.

In neither *Koziol* nor *Dawson* was there evidence that the alleged donor intended to benefit the donee. In the present case there was such evidence. Anna Blake's statement that she considered the money in the joint accounts as Florence Hayes' is not inconsistent with a gift having been made to her. The money had been accumulated by Florence and, although the joint account gave Anna the legal right to withdraw the money for her own purposes, it was both natural and righteous to view the money as Florence's, to be kept and used by her as long as she had need of it.

■■ Likewise, the fact that Anna did not inquire as to the amount in the accounts, did not obtain possession of the bankbooks and made no effort to withdraw the money from the accounts after Florence's death, is not inconsistent with her belief that a gift had been made to her. She was neither prying nor grasping and cannot be censored for her restraint. Florence and Anna could not have manual possession of the bankbooks at the same time and possession by either was for the benefit of both. *Illinois Trust and Savings Bank v. Van Vlack* (1923), 310 Ill.185, 141 N.E.546. There was little opportunity for Anna to withdraw the money after her friend died. She found the niece antagonistic when she tried to fulfill the post-death responsibilities placed upon her by Florence. She did not have the passbooks; although she was entitled to the books as the survivor, the administrator's representatives kept them in their possession. The administrator is hardly in a position to criticize the respondent for not doing what the administrator prevented her from doing.

Each case involving a joint tenancy account must be evaluated on its own facts and circumstances. A fact or circumstance having great significance in one case may have very little in another. In the case at bar,

the donor was knowledgeable about joint accounts. As the trial court said, "she understood the language and apparently knew the consequences." The joint account was created at her request. Her relatives were not close to her; her friend, Anna, was. She placed her money, her care and her burial in Anna's hands. The fact that she told Anna that she wanted her to make withdrawals if she became ill does not mean that she did not intend Anna to have whatever money remained in the accounts at the time of her death.

██ The trial court did not err in finding that the administrator failed to present the clear and convincing evidence necessary to overcome the presumption of donative intention arising from the joint agreement.

The judgment is affirmed.

Judgment affirmed.

McNAMARA, P. J., and SCHWARTZ, J., concur.