*In re* ESTATE OF SARAH M. WILKENING, Deceased.—(Robert F. Bohne, Ex'r of the Estate of Sarah M. Wilkening, Deceased, Plaintiff-Appellant, *v.* Thord C. Nicholson, Defendant-Appellee.)

First District (5th Division)   No. 81—0746

Opinion filed October 15, 1982.

Lawrence A. Kerns and Associates, of Chicago, for appellant.

Edward W. Barrett and Charles W. Siragusa, both of Chicago (Crowley, Barrett & Karaba, of counsel), for appellee.

JUSTICE WILSON delivered the opinion of the court:

This is a consolidated appeal arising out of the creation of joint tenancy accounts (Ill. Rev Stat. 1981, ch. 76, par. 2) at two separate Illinois banking institutions.[1] Plaintiff, executor of the estate of Sarah M. Wilkening, appeals from judgments entered against it upon motions for judgment filed in each separate action by defendant, Thord C. Nicholson, pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1110, formerly Ill. Rev. Stat. 1981, ch. 110, par. 64(3)). In each case, the trial court held that a fiduciary relationship did exist between Sarah and Nicholson; how-

---

[1] On April 1, 1980, defendant, surviving joint tenant, filed separate complaints against Palatine National Bank, 80 L 7587, and Palatine Savings and Loan Association, 80 L 7586, seeking the balance in each of the accounts. Upon defendant's motion, the suits were transferred to the probate division for hearing in conjunction with the pending probate of the estate of Sarah M. Wilkening. Thereafter, the estate was granted leave to intervene in each of the suits as counterclaimant against defendant and the respective banks.

ever, the existence of a fiduciary relationship between joint tenants did not in itself serve to rebut the presumption of donative intent and shift the burden of proof to the surviving joint tenant. Instead, it was incumbent upon the estate to prove that the relationship had been abused or that a confidence of decedent had been betrayed.

On appeal, the estate contends that: (1) proof of a fiduciary relationship between joint tenants rebuts the presumption of donative intent and shifts the burden to the surviving joint tenant to prove good faith and fair dealing; (2) the presumption of donative intent is overcome by the fact that Sarah held the disputed funds in trust and thus could not have had the requisite donative intent at the time the accounts were created; and (3) the accounts were created as convenience accounts for Sarah's benefit with no intent to make a gift to Nicholson. For the reasons that follow we affirm the trial court's judgment.

Sarah Wilkening, an elderly spinster, owned and resided on a 105-acre farm in Schaumburg, Illinois, as tenant in common with her unmarried brother, Walter. Sarah and Walter did not have a close brother-sister relationship and neither was socially active with friends or relatives.

In 1951, Thord Nicholson and his family purchased the farm adjacent to the Wilkening farm and lived there until 1974 at which time Nicholson sold his farm and moved to a nearby suburb. During the period from 1951 to 1974 Sarah and the Nicholsons developed a close friendship which continued until Sarah's death. Sarah relied regularly on Nicholson to drive her places and she also discussed various personal business matters with him. In addition to helping Sarah, the Nicholsons visited her socially at least once a week and on a daily basis when she was hospitalized in January 1979. At no time did the Nicholsons receive any monetary compensation for their services.

In 1974, Sarah and Walter decided to sell their farm, and, in that regard, asked Nicholson to recommend an attorney. Nicholson recommended Francis Sweet, who had negotiated the sale of his farm earlier that year. Sarah asked Sweet to keep Nicholson informed of all correspondence regarding the real estate transaction. When asked to do so, Nicholson would explain certain aspects of the sale to Sarah and offer his advice. The record indicates, however, that Sarah fully understood the nature of the negotiations and merely sought Nicholson's advice as a friend who had recently engaged in a similar real estate transaction. Nicholson received no compensation for the advisory services. Furthermore, although Sweet also drew up Sarah's will and handled other business matters for Sarah, Nicholson was not

privy to the particulars of those matters.

On December 3, 1977, Sarah asked Nicholson to drive her to Palatine Savings and Loan Association (PS&L), Palatine, Illinois, where she closed out one savings account and opened a joint account with Nicholson. During the same visit Sarah transferred an existing certificate of deposit to joint tenancy with Nicholson.[2]

Subsequently, on December 19, 1977, Sarah and Walter executed a real estate sale contract with Thomas Origer, at which time Origer issued separate earnest money checks to Sarah and Walter, each in the amount of $50,000. The following day Sarah asked Nicholson to drive her to the PS&L where she opened another savings account as joint tenant with Nicholson, with right of survivorship, and not as tenants in common. The record indicates that Sarah understood the nature of joint tenancy accounts and completed the transaction without the aid or advice of Nicholson. Sarah deposited $40,000 of the $50,000 she had received from Origer into the savings account and received a cashier's check for the remaining $10,000.

Sarah then asked Nicholson to drive her to Palatine National Bank (PNB) where she opened a checking account in her name only and another savings account as joint tenant with Nicholson, with right of survivorship, not as tenants in common. Sarah deposited $1,000 into the checking account and $9,000 into the joint tenancy savings account. The record indicates that the accounts at both PS&L and PNB were opened pursuant to written agreement in full compliance with statutory law.

On November 8, 1978, the Wilkenings and Origer entered into an agreement to extend the closing date of the sale of the farm. As consideration for the extension, Origer again issued separate checks to Sarah and Walter, each in the amount of $50,000. A few days later, Sarah asked Nicholson to drive her to PNB where she purchased a $50,000 certificate of deposit as joint tenant with Nicholson, pursuant to written agreement, with right of survivorship, not as tenants in common. The record indicates that Sarah understood the nature of the transaction and that Nicholson offered no advice or direction.

In January 1979, Sarah, age 82, suffered a stroke whereby she lost all ability to communicate. She was immediately hospitalized and died in the hospital on February 25, 1979, without ever having regained any communicative abilities. While Sarah was hospitalized,

---

[2]The closed savings account was a joint account with Charlotte and Monroe Meyer, neighbors that had recently moved out of state. Similarly, the original certificate of deposit had been owned by Sarah in joint tenancy with the Meyers.

Walter located the joint account passbooks and gave them to Nicholson. Nicholson paid Sarah's hospital bills from one of the accounts, made a deposit on a nursing home, and paid Sarah's burial expenses. Approximately one month after Sarah's death, Walter died of natural causes. At that time, Nicholson paid Walter's property insurance premiums, his estate insurance and all his burial expenses with funds from one of the joint accounts.

Sarah's will was admitted to probate on March 26, 1979. Nicholson was not a beneficiary under the will; however, he was designated successor executor. As surviving joint tenant, Nicholson filed suits against PNB, PS&L and Schaumburg State Bank[3] seeking the funds in the joint accounts he owned with Sarah.

OPINION

The first issue presented for review is whether proof of a fiduciary relationship between joint tenants rebuts the presumption of donative intent and shifts the burden to the surviving joint tenant to prove good faith and fair dealing.

The presumption of donative intent and the degree of proof necessary to rebut that presumption was set forth in *Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 202 N.E.2d 470. In *Murgic*, the court held that an instrument creating a joint account pursuant to the statutes is presumed to speak the whole truth. One claiming adversely thereto cannot go behind the terms of the agreement unless it has been shown by clear and convincing evidence that a gift was not intended. The *Murgic* court was unequivocal in its holding that the burden does not shift to the party claiming under the agreement.

In the case at bar, the estate acknowledges *Murgic* as the first Illinois case to firmly endorse the *prima facie* presumption of donative intent. The estate argues, however, that the policy considerations of convenience and stability of ownership underlying the *Murgic* decision serve to undermine the concept of basic fairness when applied to a fiduciary relationship. Thus, the estate contends, the only equitable solution is to place the burden on the fiduciary to prove that all transactions were fair and in good faith.

In support of its position, the estate cites *In re Estate of Trampenau* (1980), 88 Ill. App. 3d 690, 410 N.E.2d 918 and several cases from out-of-state jurisdictions. The estate's reliance on *Trampenau*,

---

[3]The funds on deposit in the Schaumburg State Bank are not made a subject of this appeal.

however, is clearly misplaced as it is factually distinguishable on a very critical point. The *Trampenau* case concerned a joint tenancy stock brokerage account in the name of decedent and respondent for which the decedent had executed neither an agreement to establish a joint tenancy nor signed a common signature card. The court found that the transaction had been unilaterally initiated and carried out by the respondent. Because of the unilateral circumstances surrounding the creation of the account, the court held that the burden was upon respondent to show by clear and convincing evidence that the purported gift was not the product of fraud or overreaching. In our case, the parties have stipulated that the joint tenancy accounts were created in compliance with Illinois statutory law and that written agreements were executed for each account. Furthermore, the record indicates that Sarah opened the accounts in person, of her volition, and without any advice or direction from Nicholson.

Factually similar to the case at bar are *In re Estate of Foster* (1969), 104 Ill. App. 2d 447, and *In re Estate of Copp* (1971), 132 Ill. App. 2d 974, which the estate attempts to dismiss as "misguided." Both *Foster* and *Copp* addressed the interrelationship between the fiduciary and joint tenancy presumptions and discarded the fiduciary rule in favor of the presumption of donative intent.

In *Foster*, the surviving joint tenant, decedent's grandnephew, dominated and clearly controlled the affairs of the decedent, an 85-year-old man in poor physical health. The court, however, held that evidence of the decedent's overwhelming reliance on the grandnephew did not overcome the presumption of donative intent. In arriving at its decision, the *Foster* court stated:

> "The mere fact that a fiduciary relationship may exist is not sufficient to rebut the presumption of donative intent inherent in joint tenancy accounts. A breach of that relationship must be shown so that it will be clear and convincing that a gift was not intended.
>
> To hold that the existence of a fiduciary relationship changes the effect of the ruling in *Murgic* would be contrary to the reasoning on which that decision is based." 104 Ill. App. 2d 447, 453.

In *Copp*, decedent, while hospitalized, asked her niece to obtain signature cards for her current checking and savings accounts so that she could convert them to joint tenancy accounts with the niece. At the time decedent signed the card, she made an oral statement to her niece in the presence of witnesses that she wanted her niece to have the funds which were in the accounts. She then gave the savings ac-

count book to her niece. Upon release from the hospital, decedent, age 90, lived in a nursing home until her death a short time later. Throughout decedent's confinement, the niece visited her regularly and paid her bills from the joint checking account. After decedent's death, the executrix brought a citation proceeding to bring the proceeds of the savings account into the estate. The checking account was not at issue. The question was whether the estate or the niece had the burden of proof regarding the issue of donative intent since the surviving joint tenant was in a fiduciary relationship with the decedent.

The *Copp* court focused on *In re Estate of Dawson* (1968), 103 Ill. App. 2d 362, 243 N.E.2d 1, *In re Estate of Schneider* (1955), 6 Ill. 2d 180, 127 N.E.2d 445, *Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 202 N.E.2d 470, and *In re Estate of Foster* (1969), 104 Ill. App. 2d 447, and concluded that the existence of a fiduciary relationship between joint tenants did not in itself serve to rebut the presumption of donative intent and shift the burden of proof to the surviving joint tenant. The *Copp* court further stated that absent evidence of abuse or betrayal of confidence, the finding of a fiduciary relationship between the joint tenants does not rebut the presumption.

Similarly, in the case at bar, the estate has failed to establish a breach of the fiduciary relationship which existed between Sarah and Nicholson. Thus, without such proof and without persuasive policy arguments by the estate as to why this court should ignore other Illinois appellate court decision and transpose the recognized priority of presumptions, we hold that proof of a fiduciary relationship does not rebut the presumption of donative intent without evidence of abuse of that relationship or betrayal of a confidence.

The second issue for review is whether Sarah held the disputed funds in an express trust and thus could not have formulated the requisite donative intent at the time the accounts were created. The estate claims that Sarah and Origer (purchaser) intended that the earnest money payments be held in an express trust and thus Sarah could not have intended those payments to be a gift to Nicholson. Furthermore, the estate argues that Sarah, as trustee, did not have the grant of authority necessary to make a gift of trust funds. *City of Jacksonville v. Bankers Life Co.* (7th Cir. 1937), 90 F.2d 141.

The requirements of a valid express trust are: (1) intent of the parties to create a trust, which may be shown by a declaration of trust by the settlor or by circumstances which show that the settlor intended to create a trust; (2) a definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of

a trust purpose and how the trust is to be performed; and (6) delivery of the trust property to the trustee. (*Price v. State* (1979), 79 Ill. App. 3d 143, 148, 398 N.E.2d 365.) If any of the necessary elements of a trust are not described with certainty, no trust is created. (*Marble v. Marble* (1922), 304 Ill. 229, 235, 136 N.E. 589.) An oral express trust of personal property is valid. However, one seeking to establish an express trust by parol evidence bears the burden of proving the trust by clear and convincing evidence. (*Strilky v. Levy* (1961), 33 Ill. App. 2d 91, 99, 178 N.E.2d 694.) Evidence to establish a trust must be unequivocal both as to its existence and to its terms and conditions. (*Clemens v. Sandee Manufacturing Co.* (1969), 114 Ill. App. 2d 322, 337, 252 N.E.2d 897.) In other words, the acts or words relied upon must be so unequivocal as to lead but to one conclusion, and if the evidence is doubtful or capable of reasonable explanation upon any other theory, it is not sufficient to establish an oral express trust. (*Samuel v. Northern Trust Co.* (1975), 34 Ill. App. 3d 500, 505.) In order to determine whether the parties intended to create an express or technical trust, we may look to their acts in the management and payment of the funds as well as to the receipt which was issued. (*Schaack v. Reiter* (1939), 372 Ill. 328, 332, 23 N.E.2d 714.) The findings of the trial court as to the existence of a trust will not be disturbed on review unless such findings are against the manifest weight of the evidence. *Gossett v. Levy* (1963), 39 Ill. App. 2d 447, 188 N.E.2d 894.

In the pending case, the trial court found that the requisite element of intent to create a trust had not been established. In its effort to demonstrate intent, the estate relies on pertinent provisions of the sales contract and extension agreement executed by the Wilkenings and Origer to show that Origer expected the Wilkenings "to hold the earnest money in trust pending the final closing or any intervening termination of the contract."[4] The record reveals, however, that there

---

[4]The pertinent provisions of the contract and extension agreement are as follows:

(contract) "3. Purchaser has paid $100,000 as earnest money to be applied on the purchase price—at the time of closing ***

\* \* \*

7. The earnest money shall be *held* by Walter Wilkening in the amount of $50,000 and Sarah Wilkening in the amount of $50,000 for the mutual benefit of the parties.

RIDER 5 - If this contract is terminated without Purchaser's fault the earnest money shall be returned to the Purchaser, but if the termination is caused by the Purchaser's fault, then the earnest money shall be forfeited to the Seller."

were no discussions between the parties concerning any restrictions whatsoever on Sarah's and Walter's use of the earnest money which would substantiate the estate's contention. In fact, Origer's issuance of separate checks to Sarah and Walter is more indicative of an intent that the payments be under the individual control of Sarah and Walter, than an intent that the payments be restricted trust property. Furthermore, if Origer had intended that the earnest money be held in trust, he had ample opportunity during the contract negotiations to insist that a trust account be established by either the Wilkenings or their attorney.

Moreover, Illinois law clearly states that the intent to create an express trust must be evidenced by all parties to the transaction. (*Price v. State* (1979), 79 Ill. App. 3d 143, 398 N.E.2d 365; *Samuel v. Northern Trust Co.* (1975), 34 Ill. App. 3d 500.) Thus, evidence of Origer's intent is not enough; Sarah must also have demonstrated the same requisite state of mind. The facts, however, do not establish the necessary state of mind. On the contrary, Sarah's deposit of the funds into various joint tenancy accounts, including a certificate of deposit with early withdrawal penalties, were acts consistent with an intent to exercise her absolute control over the funds and not to hold them inviolate. In that same regard, Sarah's decision to open new accounts into which only the earnest money funds were deposited is not conclusive evidence of an intent to segregate the funds and create a trust. Such an act can readily be construed as evidence of an intent to gift Nicholson with funds which he was instrumental in procuring. Lastly, the fact that Sarah did not withdraw any of the funds from the accounts in the short time before her death is indicative of nothing more than Sarah's ability to meet her expenses from other financial sources.

In summary, the estate's allegation that an express trust was created is not supported by the record before us. The alleged acts or words of intent to create an express trust are not unequivocal, and, in fact, readily admit of an interpretation that Sarah intended to make a gift to Nicholson. For these reasons, we find that the estate failed to establish by clear and convincing evidence the existence of an express trust.

---

(extension  "2. Purchaser, upon the execution of this agreement will pay and deliver
agreement)      to Seller an additional $100,000 as earnest money ***
                                    * * *
            Except as changed by the aforesaid paragraphs, all of the provisions
            of the contract between the parties executed under date of December
            19, 1977, shall continue to remain in full force and effect."

■ As an alternative argument, the estate contends that if the real estate contract of sale and the extension agreement did not fulfill all of the legal requirements of an express trust, it is appropriate for this court to impose a resulting trust on the earnest money funds. This argument, however, was not timely raised. It is a well-established rule in Illinois that a matter raised for the first time on appeal will not be considered. (*Snow v. Dixon* (1977), 66 Ill. 2d 443, 362 N.E.2d 1052, *cert. denied sub nom. Smith v. Snow* (1977), 434 U.S. 939, 54 L. Ed. 2d 298, 98 S. Ct. 429; *Marynczak v. D&L Transport Co.* (1981), 94 Ill. App. 3d 381, 418 N.E.2d 972; *Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47.) Because the estate failed to present this argument in the trial court, it cannot be raised in this appeal. However, assuming *arguendo* that the issue had been timely raised, it would still fail. By definition, a resulting trust is imposed by operation of law to effectuate the intent of the parties. (*In re Estate of Wilson* (1980), 81 Ill. 2d 349, 410 N.E.2d 23; *Suwalski v. Suwalski* (1968), 40 Ill. 2d 492, 240 N.E.2d 677.) As previously discussed, the estate did not establish the requisite intent necessary to create an express trust. Obviously, without the established intent, the court cannot impose a trust that operates to effectuate that intent. For these reasons, a resulting trust will not be imposed.

Finally, the estate argues that the presumption of donative intent is successfully rebutted by the fact that the joint tenancy accounts were established solely for the convenience of the donor. (*In re Estate of Guzak* (1979), 69 Ill. App. 3d 552.) In addressing this argument, we recognize that each case involving a joint tenancy account must be evaluated on its own facts and circumstances. A fact or circumstance having great significance in one case may have very little in another. *In re Estate of Hayes* (1971), 131 Ill. App. 2d 563, 268 N.E.2d 501.

As support for its position, the estate cites, *inter alia, Dixon National Bank v. Morris* (1965), 33 Ill. 2d 156, and *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552. These cases, as well as the other cases cited in the estate's brief, are readily distinguishable from the case at bar and do not lend credence to the estate's argument.

In *Dixon*, the decedent sold her farm and deposited the proceeds into a joint account. At the time she opened the account, the decedent "was 73 years old, had poor eyesight, and could not read fine print." In her deposition, the surviving joint tenant (appellant) stated that she had advised the decedent to add her name to the account so that if anything happened to the decedent, appellant could pay the bills. Further evidence of a convenience account was appellant's statement to the executor's attorney after decedent's death that the joint ac-

count had been opened so that her mother's bills could be paid if she were incapacitated. Based primarily on appellant's statements, the *Dixon* court held that the presumption of donative intent had been rebutted by clear and convincing evidence that a convenience account had been established.

In the pending case, the record is silent as to any declarations by Sarah regarding the purpose for creating the joint tenancy accounts with the exception that she thought Nicholson was a kind man. In addition, the record reveals that Sarah was mentally competent and apparently read and understood all documents which she executed. Sarah never requested that Nicholson pay her hospital bills from the joint accounts. The estate, in its own argument, concurs that Nicholson received no direction from Sarah to use the funds in the joint accounts for her care. Paradoxically, the estate later argues that the accounts were established as convenience accounts for Nicholson "to carry out her [Sarah's] affairs in the event of her illness." Obviously, these are mutually exclusive allegations, and the estate's argument fails for lack of clear and convincing evidence.

The court in *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, reached the same result on facts similar to those in *Dixon*. In *Guzak*, the surviving joint tenant testified repeatedly that the account at issue belonged to the decedent. Coupled with this declaration was the inequitable distribution of decedent's assets that would result if the surviving joint tenant were entitled to the proceeds in the joint tenancy account. In the case at bar, Nicholson has consistently claimed ownership of the joint accounts. For example, when Walter died in March, approximately one month after Sarah's death, Nicholson paid Walter's property insurance premiums, his estate insurance and his burial expenses with funds withdrawn from one of the joint accounts. These withdrawals clearly demonstrate Nicholson's belief that the funds were his to use as he deemed appropriate. Furthermore, upon Sarah's death, Nicholson, as surviving joint tenant, would receive a mere one-quarter of the amount bequeathed to each of the primary beneficiaries under Sarah's will. Two of the beneficiaries were sisters, one a nephew, and one the son of friends of Sarah. The fact that Nicholson was not included in the will is not conclusive of a lack of donative intent by Sarah. Sarah may have decided that the balance in the joint accounts was sufficient to show her appreciation to Nicholson. In addition, no evidence was adduced at trial to warrant that Sarah's entire estate be distributed to individuals with whom she had little or no contact in her later years, and that the only loyal and devoted friend she had be totally forgotten.

Based on its factual similarities to the case at bar, we find *In re Estate of Hayes* (1971), 131 Ill. App. 2d 563, 268 N.E.2d 501, to be persuasive of the argument that the accounts at issue were not established as convenience accounts. In *Hayes*, decedent, shortly before her death at age 60, transferred several savings accounts from her name only to joint tenancy with her longtime friend, Anna Blake. There was no evidence that the transfer was made in expectation of death. Until her death, decedent retained the passbooks. At no time did Anna make any deposits in the accounts. No withdrawals were made by either party. The joint tenancy agreements signed by decedent and Anna complied with relevant statutory law.

In an action to recover the funds in the joint tenancy accounts, the administrator alleged that the accounts were created solely for the convenience of the decedent and the funds were not intended as gifts to Anna.

The *Hayes* court held that the administrator had failed to present the clear and convincing evidence necessary to overcome the presumption of donative intent. In arriving at its decision, the court stated:

"Anna Blake's statement that she considered the money in the joint accounts as Florence Hayes' is not inconsistent with a gift having been made to her. The money had been accumulated by Florence and, although the joint account gave Anna the legal right to withdraw the money for her own purposes, it was both natural and righteous to view the money as Florence's, to be kept and used by her as long as she had need of it.

Likewise, the fact that Anna did not inquire as to the amount in the accounts, did not obtain possession of the bankbooks and made no effort to withdraw the money from the accounts after Florence's death, is not inconsistent with her belief that a gift had been made to her. She was neither prying nor grasping and cannot be censored for her restraint. Florence and Anna could not have manual possession of the bankbooks at the same time and possession by either was for the benefit of both.

\*\*\* [T]he donor was knowledgeable about joint accounts. \*\*\* The joint account was created at her request. Her relatives were not close to her; her friend, Anna, was. She placed her money, her care and her burial in Anna's hands." 131 Ill. App. 2d 563, 568-69.

■ We concur with the *Hayes* rationale. In the case at bar, evidence that Sarah retained control of both the savings account pass-

books and certificate of deposit receipt and that she made all deposits into the accounts does not effectively rebut the presumption of donative intent. Testimony revealed that Sarah understood the effects of a joint tenancy account and that she opened all accounts voluntarily. Nicholson exercised no influence over her to include him as joint tenant. Sarah made no specific request that Nicholson use the funds to take care of her and pay her bills. Furthermore, Sarah was closer to Nicholson than she was to her own relatives and relied on him extensively during the negotiations for the sale of her farm. The facts presented demonstrate a degree of friendship between Sarah and Nicholson that would clearly warrant a gift of the joint tenancy funds as a final gesture of Sarah's appreciation. We find that the trial court's decision is supported by evidence and see no basis to find it was against the manifest weight of the evidence.

For the foregoing reasons we affirm the trial court's judgment.

Affirmed.

SULLIVAN, P.J., and LORENZ, J., concur.