In re Nancy S. MARCHIANDO, Debtor.

**STATE OF ILLINOIS, DEPARTMENT OF THE LOTTERY, Plaintiff–Appellant,**

v.

**Nancy S. MARCHIANDO, Defendant–Appellee.**

No. 92 C 20105.
Bankruptcy No. 91 B 34022.
Adv. No. 91 A 3069.

United States District Court,
N.D. Illinois, W.D.

June 22, 1992.

Mark E. Wilson, Asst. Atty. Gen., Chicago, Ill., for plaintiff-appellant.

Bradley J. Waller, Boyle, Cordes & Brown, DeKalb, Ill., for defendant-appellee.

## ORDER

REINHARD, District Judge.

## INTRODUCTION

The State of Illinois, Department of Lottery (Department), appellant, seeks review of the bankruptcy judge's order granting summary judgment in favor of Nancy S. Marchiando, appellee, 138 B.R. 548. The order declared that appellee's debt to the Department, which arose from the defalcation of lottery proceeds, was dischargeable. The bankruptcy judge held that appellee was not a fiduciary under 11 U.S.C. § 523(a)(4) because no express trust was created by the terms of the Illinois Lottery Law, Ill.Rev.Stat.1989, ch. 120, ¶ 1151 *et seq.*

## CONTENTIONS

The sole issue presented for review is whether the bankruptcy judge erred in granting appellee's motion for summary judgment by holding that Marchiando did not act in a fiduciary capacity under 11 U.S.C. § 523(a)(4) (1988).

## FACTS

The facts are undisputed and relatively straightforward. Accordingly, we will adopt the facts as found by the bankruptcy judge.

On October 1, 1983, appellee opened and began operating a grocery business in Sycamore, Illinois. In December of that same year, she became licensed by the State of Illinois to serve as an agent for the Department.

On February 26, 1991, appellee filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1988), (Code). Appellee listed "The Illinois State Lottery" as the holder of an unsecured claim for $16,000. Appellee's personal property was listed at $8,380, including $2,580 in cash and $300 in a checking account.

On May 26, 1991, the Department filed a Proof of Claim in the amount of $16,639.95. This represented principal in the amount of $15,977.77 and $662.18 in the form of a "2% finance charge thru 12/31/90 in accordance with state statute."

On June 21, 1991, the Department filed a complaint charging appellee with failure to perform a statutory duty by failing to segregate lottery proceeds in a trust account for the Department's benefit and by failing to pay such proceeds on demand. The complaint also alleged that appellee converted the lottery proceeds for her business and personal needs. The complaint prayed for a determination that the debt owed to the Department is nondischargeable under § 523(a)(4) of the Code.

Appellee admits she failed to segregate the lottery proceeds as alleged and that she owes the Department the money in question. Appellee contends, however, that the debt is dischargeable.

In her motion for summary judgment, appellee argued that defalcation while acting in a fiduciary capacity can only arise with reference to an "express trust." She further argued that an "express trust" is not created by § 10.3 of the Illinois Lottery Law, Ill.Rev.Stat.1989, ch. 120, ¶ 1160.3. Appellee further argued that the term "trust fund" used in the statute does not transform a mere agency relationship into a fiduciary relationship for bankruptcy purposes.

The bankruptcy judge granted the motion holding, among other things, that because the language in the Illinois statute did not create an express trust it, therefore, cannot be the basis of a fiduciary relationship under § 523(a)(4) of the Code.

## DISCUSSION

In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988). Summary judgment is appropriate where the pleadings, depositions and affidavits

show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509; *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Miller v. ICX*, 358 F.Supp. 1378, 1380 (N.D.Ill.1972).

The facts are not in dispute and the only issue before the court is whether appellee is entitled to a discharge, as a matter of law, under § 523(a)(4) of the Code. This Section excepts from discharge any debt which is attributable to "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4) (1988).

The purpose of the Bankruptcy Code is to provide the debtor with a new opportunity in life and a clear field for future efforts, unhampered by pressure and discouragement of pre-existing debt. *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970); *In Re Pitney*, 119 B.R. 841, 843 (Bkrtcy.M.D.Fla.1990). Exceptions to discharge are allowed, however, if the creditor proves by a preponderance-of-the-evidence that a particular obligation of the debtor falls within the scope of § 523. *Grogan v. Garner*, —— U.S. ——, ——, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

■ All questions of dischargeability of debts in bankruptcy proceedings are federal law questions. *Matter of McCraney*, 63 B.R. 64, 65 (Bkrtcy.N.D.Ala.1986) (citing *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). The concept of a fiduciary is a matter of federal law. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934) (citing *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844)); *In Re Guy*, 101 B.R. 961, 986 (Bkrtcy.N.D.Ind. 1988); *McCraney*, 63 B.R. at 66. The traditional definition of a "fiduciary" is not applicable in bankruptcy law. *In Re Cair-*

*one*, 12 B.R. 60, 62 (Bkrtcy.D.R.I.1981). The general meaning—a relationship involving confidence, trust and good faith—is far too broad. *Cairone*, 12 B.R. at 62. The fiduciary relationship referred to in § 523(a)(4) has been held to be limited to express and technical trusts, *Cairone*, 12 B.R. at 62 (citing *Davis*, 293 U.S. 328, 55 S.Ct. 151), neither of which the law implies from a contract, *Chapman*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844). Further, it must have existed prior to the act creating the debt and without reference to that act. *Davis*, 293 U.S. at 333, 55 S.Ct. at 153.[1] Thus, implied or constructive trusts and trusts *ex maleficio* are not susceptible to the establishment of a fiduciary relationship under the Code. *See Cairone*, 12 B.R. at 62. Similarly, ordinary commercial relationships such as creditor-debtor and principal-agent relationships have been held not to create a fiduciary relationship in the bankruptcy context. *Cairone*, 12 B.R. at 62.

■ A fiduciary relationship for dischargeability purposes may exist where a state statute has defined a particular relationship. *In Re Janikowski*, 60 B.R. 784, 788 (Bkrtcy.N.D.Ill.1986). The state law creating the fiduciary relationship must, however, have imposed a trust on the property and set forth the fiduciary duties. *Janikowski*, 60 B.R. at 788.

■ While federal law determines what a "fiduciary" is, state law takes on added importance in determining whether a specific case involves an "express trust." *See Davis*, 293 U.S. at 334, 55 S.Ct. at 154 (applying state law to the underlying question of whether the petitioner was a trustee); *Guy*, 101 B.R. at 986; *McCraney*, 63 B.R. at 65–66. Under Illinois law, an express trust exists where there is (1) intent to create a trust; (2) definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications

---

1. *Davis* further cautions as follows:

   [i]t is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee before the wrong and without reference thereto ... 'The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created'

   *Davis*, 293 U.S. at 333, 55 S.Ct. at 153 (citation omitted).

of a trust purpose; and (6) delivery of trust property to the trustee. *Yardley v. Yardley*, 137 Ill.App.3d 747, 759, 92 Ill.Dec. 142, 151, 484 N.E.2d 873, 882 (2nd Dist.1985); *Estate of Wilkening*, 109 Ill.App.3d 934, 940, 65 Ill.Dec. 366, 371, 441 N.E.2d 158, 163 (1st Dist.1982); *see Wynekoop v. Wynekoop*, 407 Ill. 219, 95 N.E.2d 457, 460 (1950); *see also Pitney*, 119 B.R. at 843. If any of the necessary elements of a trust are not described with certainty, no trust is created. *Wilkening*, 109 Ill.App.3d at 940–41, 65 Ill.Dec. at 371, 441 N.E.2d at 163 (citing *Marble v. Marble*, 304 Ill. 229, 235, 136 N.E. 589 (1922)).

■ Section 10.3 of the Illinois Lottery Law provides, in pertinent part, as follows:

§ 10.3. All proceeds from the sale of lottery tickets or shares received by a person in the capacity of a sales agent *shall constitute a trust fund until paid to the Department* either directly, or through the Department's authorized collection representative. Proceeds shall include unsold instant tickets received by a sales agent and cash proceeds of sale of any lottery products, net of allowable sales commissions and credit for lottery prizes paid to winners by sales agents. Sales proceeds and unsold instant tickets shall be delivered to the Department or its authorized collection representative upon demand. Sales agents shall be personally liable for all proceeds which shall be kept separate and apart from all other funds and assets and shall not be commingled with any other funds or assets. In the case of a sales agent who is not an individual, personal liability shall attach to the owners and officers of the sales agent. The Department shall have a right to file a lien upon all real and personal property of any person who is personally liable under this Section for any unpaid proceeds, which were to be segregated as a trust fund under this Section, at any time after such payment was to have been made. Such lien shall include any interest and penalty provided for by this Act and shall be deemed equivalent to, and have the same effect

as, the State tax lien under the Retailers' Occupation Tax Act.

Ill.Rev.Stat.1989, ch. 120, ¶ 1160.3.

Section 21 of the Illinois Lottery Law further provides that the agents shall be liable for any and all tickets accepted or generated by that agent and "such tickets *shall be deemed to have been purchased* by the agent" if not returned within the time and manner described. Ill.Rev.Stat. 1989, ch. 120, ¶ 1171.

The court notes that section 10 of the Illinois Lottery Law provides for the licensing of agents to sell lottery tickets or shares. Before issuing the license, however, the Director shall consider (a) the financial responsibility and security of the person and his business or activity, (b) the accessibility of his place of business or activity to the public, (c) the sufficiency of existing licenses to serve the public convenience, (d) the volume of expected sales, and (e) such other factors as he or she may deem appropriate. Ill.Rev.Stat.1989, ch. 120, ¶ 1160. The court also notes that the Director may require a bond from every licensed agent. *See* Ill.Rev.Stat.1989, ch. 120, ¶ 1159(d).

■ The statute in this case is distinguishable from that in the decision in *In the Matter of Thomas*, 729 F.2d 502 (7th Cir.1984), relied on by appellant, because in *Thomas*, the statute specifies a purpose of the trust and identifies an ascertainable class of beneficiaries. In *Thomas*, the statute created a trust fund *for the purpose* of paying for labor, suppliers and materials to be used on the project and was designed "to protect workmen and suppliers who have furnished labor and material as well as owners against irresponsible or underfinanced building contractors diverting funds to unrelated projects or for personal use." *Thomas*, 729 F.2d at 503–04. The statute in the instant case is different because it provides for no "ascertainable beneficiaries." Appellant's argument that those citizens of the state who "rely on the State for services such as health care, crime prevention and criminal prosecution would consider an important revenue statute like the lottery to serve a much more compel-

ling 'public purpose of protecting third parties' than one designed specifically to protect insurance companies' bank accounts," is unpersuasive. These are not the "ascertainable beneficiaries" required as an element of an express trust. Their connection with appellee is indirect at best and would not give them standing to sue.

In *Matter of Schusterman*, 108 B.R. 893 (Bkrtcy.D.Conn.1989), a case factually parallel to this one, the court held that a statute imposing a trust did not operate to transform an ordinary commercial relationship, regarding the sale of lottery tickets, between the State and the debtor into one involving a fiduciary duty. Bankruptcy Judge Krechevsky, in an earlier unpublished memorandum, *In the Matter of Great Oak Farms, Inc.*, Bk. No. H–19–542, Slip Opinion (D.Conn.1980), attached as an appendix to his opinion in *Schusterman*, 108 B.R. at 895, stated that in every case where courts have found an express trust and/or a fiduciary capacity imposed by statute, the statute involved cash paid to a contractor-trustee which was to be employed for the benefit of subcontractors and that in no instance had a trust been found where "goods" are furnished for sale. *Schusterman*, 108 B.R. at 900. The context of the construction trade where monies are delivered to be turned over to third parties is absent. *Schusterman*, 108 B.R. at 900. As such, no trust was created and, therefore, no fiduciary relationship existed between appellant and appellee.

As the court stated in *Schusterman*,

[a]t bottom, the State is operating a gambling business designed, at least in part, to raise revenue. The State uses agents to sell the inventory (lottery tickets) of this business, and the relationship between the State and its agents cannot by the use of "descriptive epithets" transform, for the sole purpose of negating the discharge provisions of federal bankruptcy laws, an otherwise dischargeable debt into a nondischargeable debt.

*Schusterman*, 108 B.R. at 895.

A contrary view, however, is expressed in *In Re Cairone*, 12 B.R. 60 (Bkrtcy.D.R.I. 1981). The facts of *Cairone* are also similar to those in the present case. In that case, Rhode Island law provided that the funds received from the sales of lottery tickets were to be held as a "trust fund" by the agent until remitted to the Lottery Commission. Because the parties in *Cairone* stipulated that the proceeds in question were "trust funds" pursuant to the statute, the court, without any analysis, merely accepted the parties position and, citing the statute, held that the funds constituted a "trust." The court also noted that the statute imposed a duty to segregate funds and held the sales agent personally liable for all collected proceeds. The court in *Cairone* did not inquire into the underlying nature of the relationship between the debtor and the Lottery Commission. The *Schusterman* court, however, did look beyond the language of the statute and observed that the underlying nature of the relationship was commercial, and the "trust" language was merely an attempt the disguise that relationship so as to circumvent federal bankruptcy law.

■ This court chooses to follow *Schusterman*. When viewing the statute as a whole, it is evident that it is, in reality, a commercial relationship that is created. Among the criteria evaluated by the state in determining whether to grant a license to an applicant is the accessibility of the place of business to the public and the volume of its expected sales. Ill.Rev.Stat. 1989, ch. 120, ¶ 1160. Further, the court notes that all tickets accepted by appellee "are deemed to have been purchased by the agent" if not returned. The above language is consistent with the establishment of a commission sales arrangement and inconsistent with the establishment of a fiduciary relationship. *See Schusterman*, 108 B.R. at 900.

■ The state, through creative legislation cannot transform a normal principal-agent/commercial relationship into a "trust." If this were permissible, the general rule favoring discharge would be "swallowed," *see Schusterman*, 108 B.R. at 895, and states would attempt to create

252

their own exceptions to discharge.[2]  As Bankruptcy Judge DeGunther stated below,

> [i]t would be inimical to the purpose and philosophy of the discharge in bankruptcy to permit the legislature of each state to overcome the ordinary creditor-debtor/commercial relationship by enacting laws which circumvent and thereby defeat the goal of the fresh start for debtors in bankruptcy.  Here, the State of Illinois is attempting to transform normally dischargeable debts of one of its agencies into nondischargeable debts through the enactment of a self-serving statute.

The state, through the power of its legislature, cannot attempt to place itself in a favored position that other creditors cannot achieve and thereby carve out its own exceptions to discharge.

While the state may argue that it is not adequately protected by this interpretation, the court notes that it may, pursuant to Ill.Rev.Stat.1989, ch. 120, ¶ 1159(d), require a bond from licensed lottery agents.  Thus, it is evident that the state is capable of avoiding such problems if it so chooses.

### CONCLUSION

For the foregoing reasons, the decision of the bankruptcy judge below is affirmed and the debt is discharged pursuant to 11 U.S.C. § 523(a)(4).

---

**2.** This court notes that the intent of the Illinois legislature to circumvent federal bankruptcy laws is further evidenced in Section 10.5(e) of the Illinois Lottery Law, which provides that "proceeds [from the sale of lottery tickets] shall be nondischargeable in insolvency proceedings instituted pursuant to Chapter 7, Chapter 11, and Chapter 13 of the Federal Bankruptcy Act [sic]."  Ill.Rev.Stat.1989, ch. 120, ¶ 1160.5.